## Preece v. Hardin, Sheriff, et al.

(Decided March 6, 1934.)

C. F. SEE, Jr., for appellant.

WOODS, STEWART, NICKELL & SMOOT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Some time prior to January 8, 1927, the Salisbury Realty Company filed an action in the Boyd circuit court wherein J. M. Stepp and John B. Halbert were defendants. By answer and cross-petition against his codefendant, J. M. Stepp, Halbert sought judgment for $1,815, with interest from April 13, 1926. Stepp was served with process, and on January 8, 1927, an attachment was issued to the sheriff of Martin county, and was levied by him on certain land belonging to Stepp in that county. On January 12, 1927, a lis pendens notice was filed by Halbert with the clerk of the Martin county court. Thereafter judgment on the answer and cross-

petition was rendered, the attachment, was sustained, and the sheriff of Martin county was directed to sell the land on the first day of some county or circuit court held in Martin county. . The sheriff was about to sell the land when Phillip Preece brought this action against the sheriff and Halbert to quiet his title to the land and enjoin the sale on the ground that no lis pendens notice had been recorded in the Martin county clerk's office, and that he was an innocent purchaser of the land without notice of the attachment lien. There was granted a temporary injunction, which continued in force until the final judgment. Issue was joined, and on final hearing Preece was denied the relief prayed for, and Halbert was adjudged a lien on the land for the amount of his debt, and awarded $50 damages on account of the injunction. Preece appeals, and Halbert has prosecuted a cross-appeal on the ground that the damages awarded were too small.

The evidence of the clerk of the Martin county court discloses that the lis pendens notice was brought to his office on January 12, 1927, by Jasper H. Preece, who paid the customary fee and asked him to lodge it for record, and thereupon the notice was indorsed, filed, and indexed, but was not recorded. At that time there was no regular book in which to record lis pendens notices, and he did not know that they had to be recorded. The following January 4, 1928, the notice was recorded in the miscellaneous book.

The evidence of Preece is to the effect that he purchased the land and received the deed therefor on February 5, 1927. He did not remember what valuation he paid, but it was something over $300 and the costs besides. He had closed the deal with Stepp, but before he put the deed to record he searched the records. He and his attorney searched the mortgage and deed books and miscellaneous books, and found nothing against the property. He never learned that there was anything against the property until about a year later. After he had purchased the land of Stepp and paid him for it, he found there were a lot of taxes and costs against it, which he then paid. L. K. Vinson had a half interest in the property. The way it was they indorsed a note and Stepp made the deed to them for indorsing the note. They did not pay Stepp any money, but paid off the note, he thought about the same time, "maybe the same day." He paid the taxes on February 7, 1927, the day

he came up to have the deed recorded. He stayed all night with the sheriff, T. J. Hardin, the night before he recorded the deed. Mr. Hardin said he had tacked notice on the land attached and had made his return. He then told the sheriff that, if there was anything of record, any lien or mortgage, he was not going any further. The sheriff did not tell him in whose favor the attachment was, but merely said that he had tacked up the attachment. Sheriff Hardin also testified that the time Preece came over to have the deed recorded he informed him that he had levied an attachment on the land.

As the attachment was served on the land prior to appellant's purchase, it necessarily follows that he took title subject to the attachment lien, unless he was a bona fide purchaser for value without notice. It is very doubtful whether appellant's evidence is sufficient to show that he actually paid for the land before he was informed by the sheriff of the levy of the attachment, but we shall pass this phase of the case and take up the question of constructive notice. Prior to appellant's purchase the lis pendens notice was filed in the clerk's office, and indexed, but not recorded. The law does not impose upon the party filing a lis pendens notice the duty to see that it is properly recorded. On the contrary the rule is that, when a lis pendens notice is sufficient in form, and is filed in the proper office, the party filing it will be protected, although the clerk may fail to discharge his duty in connection therewith. Fletcher v. Wireman, 152 Ky. 565, 153 S. W. 982. The rule is conceded, but it is insisted that it should not apply to a case where, as here, the attorney filing the notice knew that no regular book for recording lis pendens notices was kept. The argument is that with such knowledge it was the duty of the attorney to proceed by mandamus to require the clerk to provide a suitable book for recording such notices. If the clerk had refused to file the notice, it might be that Halbert would have had to take steps to compel him to do so in order to be protected, but that is not the case. The notice was filed. The duty of indexing and recording the notice devolved upon the clerk, and Halbert cannot be held accountable for his ignorance or carelessness, even though his attorney knew the clerk did not have in his office a suitable book in which to record the notice. In short, the law does not impose upon one having the right to lodge

an instrument for record the duty of seeing that the clerk's office is equipped with proper books for that purpose. In the circumstances there can be no doubt that appellant purchased with constructive notice of Halbert's lien, and that the court did not err in so adjudging.

On the cross-appeal it is insisted that the damages allowed on the dissolution of the temporary injunction were too small. Under the Code, if the collection, payment, or use of money be enjoined, the damages may be any rate per cent. on the sum released by the dissolution, which, in the discretion of the court, may be proper, not exceeding 10 per cent. Civil Code of Practice, sec. 295. Under this provision the question of damages is a matter that addresses itself to the sound discretion of the court, and on the showing made we are unable to say that the allowance of damages in the sum of $50 was so small as to amount to an abuse of discretion.

Judgment affirmed both on the original and cross-appeal.