888 A.2d 297

**GREENPOINT MORTGAGE FUNDING, INC., et al.**

v.

**Roger SCHLOSSBERG, Receiver.**

**World Savings Bank, et al.**

v.

**Roger Schlossberg, Receiver.**

**No. 144 Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 15, 2005.

G. Vann Canada, Jr. (Miles & Stockbridge, P.C., on the brief), Rockville, for Appellants.

Brian M. Kurtyka (Roger Schlossberg of Schlossberg & Kurtyka, P.A., on the Brief), Hagerstown, for Appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

In this consolidated appeal, Greenpoint Mortgage Funding, Inc., *et al.* and World Savings Bank, *et al.* (described variably hereafter collectively as "appellants" or "lenders") seek relief from the May 24, 2004, Memorandum Opinions and Orders of the Circuit Court for Washington County, which provided that the notices of *lis pendens,* filed by Preston S. Cecil and Curtis B. Hane as former receivers, along with Roger Schlossberg, current receiver and appellee, (hereafter "appellee," "Mr. Schlossberg" or "receiver"), with the Clerk of the Circuit Court for Montgomery County, and with the Clerk of the Circuit Court for Prince George's County, but not indexed correctly, served as sufficient constructive notice to appellants of a *pendente lite* lien against certain property.

Both Greenpoint and World Savings appealed to the Court of Special Appeals and, before that court could consider the appeal, we granted on our own initiative a writ of certiorari on March 11, 2005, *Greenpoint Mortgage Funding, Inc. v. Schlossberg,* 385 Md. 511, 869 A.2d 864 (2005), in order to address the following questions:

> "I.   Did the Circuit Court err by holding that the filing of the notices of *lis pendens* on behalf of the original receivers pursuant to Rule 12–102(b), Maryland Rules of Procedure, was sufficient to place the two mortgage lenders on constructive notice of the receivers' powers over the two parcels of real property?
>
> II.  Did the failure to properly index the notices of *lis pendens* in the name of the owner of the properties negate the effect of filing the notices of *lis pendens* as

to the appellants [Greenpoint Mortgage and World Savings Bank, the lenders]?"

We hold in respect to question one that the trial court erred. We answer the second question in the affirmative. Even if a *lis pendens* had been properly created by the express order of the judge in the underlying divorce case,[1] we hold that the failure to properly index the notices negated the effect of the filing as to the appellants. We further hold that Maryland statutes require that all instruments affecting title to real property that are recorded, must also be indexed. And we hold that a party seeking to establish a notice of *lis pendens* is charged with the duty to assure the correctness of the recording and indexing of the instrument he or she has filed. Failing correct indexing, the notice of *lis pendens* in the instant case was, or would have been, insufficient to provide constructive notice to appellants.

## I. Facts

In 1996, the Circuit Court for Washington County determined it prudent to appoint receivers in the pending divorce case of *Moses Karkenny v. Nahil Karkenny*.[2] By court order dated March 26, 1996, and clarified by order dated April 9, 1996, Curtis B. Hane and Preston S. Cecil were appointed receivers, and their counsel, Roger Schlossberg, was appointed co-receiver, for the purpose of preserving and liquidating properties located in Prince George's County and in Montgom-

---

1. Family Law Article, Title 1, Subtitle 2. *General Provisions*, § 1–203. **Special provisions of alimony, annulment, and divorce.** (b) *Lis Pendens*, provides:

    *"Unless the court* **expressly** provides otherwise, the filing of an action for . . . an absolute divorce does not constitute lis pendens in respect to any property of a party."*

    Md.Code (1984, 2004 Repl.Vol.), § 1–203 of the Family Law Article (emphasis added). Because of our resolution of this case we need not address the effect, if any, of this statute. We have found no express order in the record of this case. It was not addressed by the parties.

2. Counsel indicated at oral argument that this case is the longest-running divorce matter in the Circuit Court for Washington County.

ery County owned by *Moses* H. Karkenny.[3]

Messrs. Hane and Cecil, along with Mr. Schlossberg, then filed with the Clerk of the Circuit Court for Montgomery County on April 30, 1996, what purported to be a Notice of *Lis Pendens* in Civil No. 151,150. They filed a similar notice with the Clerk of the Circuit Court for Prince George's County on May 1, 1996. The notices' captions, prepared by the appellee, i.e., the receiver, which were likely copied from the divorce complaint, displayed Moses Karkenny as the plaintiff/counter-defendant and Nahil Karkenny as the defendant/counter-plaintiff. Thus, Nahil Karkenny was the defendant in the original divorce action.[4]

Enumerated within the body of the Notices of *Lis Pendens* were several properties owned by Moses Karkenny, which were to be subject to the notices. In the body of the Montgomery County mis-indexed Notice of *Lis Pendens*, the listing of real property subject to the proceedings in the divorce case and asserted to be in the custody of the receivers included fourteen specifically designated properties as well as "any and all other property in which any interest is owned by or vested in the said Moses Karkenny." The Prince George's County notice listed five specific properties in addition to the more encompassing description of "any and all other property in which any interest is owned by or vested in the said Moses Karkenny."[5]

---

3. Throughout the documents, Moses H. Karkenny is sometimes stated with a middle initial, and sometimes not. The presence or absence of the middle initial is not relevant in the instant case and we shall not address it further. Throughout our opinion we shall, for the most part, not include a middle initial.

4. The caption of the notice in this particular case, in which the name of the person giving notice of a potential lien was situated where the person whose property is sought to be subject to the potential lien normally is placed, may have led the clerks in two separate counties to mis-index the notices.

5. By action of the Maryland General Assembly, effective July 1, 1997, the jurisdictional boundaries of the City of Takoma Park were changed from Prince George's County to Montgomery County. Thus, some

Messrs. Hane and Cecil resigned from their receivership appointments in 1996 and 1999, respectively, and in both cases, Mr. Schlossberg was appointed as the sole successor receiver.

On September 29, 1999, Moses Karkenny, individually, executed and delivered a deed of trust apparently creating an encumbrance in favor of World Savings Bank and its trustee as to the Glaizewood Avenue property in order to secure a loan in the amount of $98,000.00. This deed of trust was recorded in the Land Records of Montgomery County on October 21, 1999.

Again, on November 24, 1999, Moses Karkenny executed in favor of Greenpoint Mortgage a promissory note for a loan in the principal amount of $45,500.00, secured by a deed of trust encumbering the Greenery Lane property. The deed of trust was then recorded among the Land Records of Montgomery County on May 25, 2000.

On August 30, 2002, Mr. Schlossberg filed in the Circuit Court for Washington County two "Complaint[s] for Declaratory Judgment and Related Injunctive Relief," [6] which included appended copies of the respective purported Notices of *Lis Pendens* the receivers had filed in mid–1996 and which bore the Clerk's "filed" stamp. In each complaint, Mr. Schlossberg stated that "by virtue of the timely filing of the Lis Pendens Notice, any persons interested in any of the property of the said Moses Karkenny located in Montgomery County, Mary-

---

encumbered properties in this case are presently located within the confines of Montgomery County although at the time the notices were filed, those properties were in Prince George's County. Neither party has raised any issues as to whether the change of location of the properties to Montgomery County from Prince George's County, absent further action in Montgomery County, would have any effect on liens or notices of *lis pendens* initially established in Prince George's County.

**6.** One complaint in the action named Greenpoint Mortgage Funding, Inc. and Moses H. Karkenny as defendants; the other complaint named World Savings Bank, F.S.B., Gary Bradley (Trustee for World Savings Bank) and Moses H. Karkenny as defendants. Apparently these actions were separate and apart from the underlying divorce case. In light of our holding that the filing party has the responsibility to assure correct indexing, we need not address whether there were separate actions.

land [or Prince George's County] were provided constructive and actual notice of the pendency of the Divorce Case and Receivership, as well as the vested title of the Receivers therein."

The appellants filed answers, and on November 22, 2002, and on January 3, 2003, Greenpoint Mortgage and World Savings, respectively, filed motions for summary judgment. Each motion was accompanied by a title examiner's affidavit attesting that an inspection of the Civil Docket maintained by the Clerk of the Circuit Court for Montgomery County in which the notice of *lis pendens* was filed did not show a notice of *lis pendens* indexed in the name of Moses Karkenny. Apparently, the Clerk of the Circuit Court for Montgomery County as well as the Clerk of the Circuit Court for Prince George's County, both had indexed the notice of *lis pendens* under the name of Nahil Karkenny, not in the name *Moses* Karkenny, because the receiver had filed a notice containing a caption that incorrectly indicated (or at least created confusion as to whether) Nahil Karkenny was the party against whom a *lis pendens* was sought, instead of the party seeking it. The Circuit Court for Washington County denied Greenpoint Mortgage's motion for summary judgment on January 7, 2003, and denied World Bank's motion for summary judgment on January 17, 2003.

Following discovery, in July 2003, appellants again filed a motion for summary judgment on the basis of the previous affidavits, an additional title examiner's affidavit, as well as Mr. Schlossberg's answers to interrogatories, which indicated that an examination of the indexes related to the Land Records, Judgment Records and Civil Docket maintained by the Clerk of the Circuit Court for Montgomery County in 1999 in the name of Moses Karkenny would not have revealed the existence of the Notice of *Lis Pendens* that had been filed in 1996 because, apparently, the notice was not indexed under the name of Moses Karkenny.

On September 26, 2003, Moses Karkenny, who remained a defendant in Mr. Schlossberg's suits, filed pro se motions to

dismiss the receiver's complaints. At oral argument on the motions for summary judgment on October 3, 2003, the Circuit Court granted Mr. Schlossberg's oral motion to file amended complaints and directed the parties to file supplementary memoranda in respect to the effect of the receivership on the titles to the Greenery Lane and Glaizewood Avenue properties.

Mr. Schlossberg answered Mr. Karkenny's motions to dismiss on October 14, 2003, and filed amended complaints on October 21, 2003, which clarified the scope of the claim as to the receiver's right to custody and control of the Greenery Lane and Glaizewood Avenue properties and sought orders compelling Greenpoint Mortgage and World Savings Bank to execute full releases of the deeds of trust encumbering those properties. The next day, the Circuit Court denied Moses Karkenny's motion to dismiss. The parties filed the requested supplementary memoranda. Mr. Schlossberg argued that his filing of the notice of *lis pendens* in compliance with Md. Rule 12–102(b) [7] had provided the necessary constructive notice of the receivership to any future party seeking to encumber property titled to Moses Karkenny.

On the other hand, appellants urged that it was the responsibility of the Receiver and his or her predecessors to verify the proper recording and indexing of the notice of *lis pendens* by the Clerks of the Circuit Court, and either failing a correct indexing so as to provide constructive notice or failing appellants' actual notice of the Washington County suit, appellant's interests in particular property titled to Moses Karkenny were superior to any equitable claim that the receiver might then assert.

---

7.  Md. Rule 12–102 *Lis pendens* (b) provides as follows:

> **Creation—Constructive notice.** In an action to which the doctrine of lis pendens applies, the filing of the complaint is constructive notice of the lis pendens as to real property in the county in which the complaint is filed. In any other county, there is constructive notice only after the party seeking the lis pendens files either a certified copy of the complaint or a notice giving rise to the lis pendens, with the clerk in the other county."

Following an April 29, 2004, hearing on the pending motions for summary judgment, the Circuit Court issued two Memoranda Opinions on May 24, 2004, and entered Orders on July 21, 2004, finding that both deeds of trust were inferior in priority to the receivership. In the two similarly worded opinions, the Circuit Court observed that "the uncontroverted affidavits of the two expert title examiners verify that neither the Circuit Court for Prince George's County nor the Circuit Court for Montgomery County indexed the Notice of *Lis Pendens* in the name of Moses Karkenny." Nevertheless, relying solely on the plain language of Md. Rule 12–102(b), the Circuit Court reasoned that the language does not mandate recording *and* indexing, but merely filing of the notice of *lis pendens*, and policy considerations exist to allocate the risks to the lending entities of an improperly indexed, or non-indexed, notice. The Circuit Court for Washington County in the two actions based upon the purported Notices of *Lis Pendens*, apparently did not consider (or at least made no reference to) the Maryland statutes in respect to recording and indexing.

On August 2, 2004, Greenpoint Mortgage and World Savings noted appeals to the intermediate appellate court. In response to the appellants' Motion to Consolidate Appeals, their appeals were consolidated by order of the Court of Special Appeals dated December 9, 2004. In March 2005, we granted certiorari. *Greenpoint v. Schlossberg,* 385 Md. 511, 869 A.2d 864, (2005.)

## II.  Discussion

### A.  Doctrine of Lis Pendens

*Lis pendens,* a doctrine with deep roots in the English courts of chancery, apparently can be traced to around 1618 during Sir Francis Bacon's time serving as Lord Keeper of the Great Seal. This doctrine is discussed in a multitude of cases and is formally defined as:

"**1.** A pending lawsuit. 2. The jurisdiction, power, or control acquired by a court over property while a legal action is pending. 3. A notice, recorded in the chain of title to real

property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome."

BLACK'S LAW DICTIONARY 950 (8th ed. 2004). Its essence, then, is one of notice to an otherwise unknowing party.

*Lis pendens* has no specific separate existence apart from its basic function to advise a person who seeks to acquire an interest in property subject to a *lis pendens* that he will be bound by the outcome of the noticed litigation. It was argued in an earlier case that "–'The principle of *lis pendens* is, that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril.'" *Feigley v. Feigley,* 7 Md. 537, 556 (1855) (citing 1 *Strob. Eq. Rep.,* 182, *Lewis v. Mew*). The Court apparently accepted the argument, stating that

"The doctrine of *lis pendens* has no application whatever to this case. As well might a pending action at law, to recover an ordinary debt, be a *lis pendens* as to the property of a debtor, as a proceeding like the present, the purpose of each being to subject the property of the debtor to the payment of debts. *Lis pendens* is a proceeding directly relating to *the thing or property in question.*"

*Id.* at 563; *see also Green v. White,* 7 Blackf. 242, 243, (Ind.1844) ("The principle is now too well settled to be even doubted, that a *lis pendens,* duly prosecuted, is notice to a purchaser, so as to affect and bind his interest by the decree."). Thus, a party who purchases while the litigation ensues is deemed a "purchaser *pendente lite.*" *See also Applegarth v. Russell,* 25 Md. 317, 321 (1866); *First Midwest v. Pogge,* 293 Ill.App.3d 359, 363, 227 Ill.Dec. 713, 716, 687 N.E.2d 1195, 1198 (1997); *Admiral Builders Corp. v. Robert Hall Village,* 101 Ill.App.3d 132, 136, 56 Ill.Dec. 627, 631, 427 N.E.2d 1032, 1036 (1981).

The rule of *lis pendens* generally arises in the context of disputes in which one or more parties have possession of real property and the potential of premature, precipitous, undue or

untoward alienation of that property needs to be avoided. Some states limit its application to disputes affecting only title to real property while others allow application of the rule of *lis pendens* more generally to any dispute that touches on the possible alienation of property.

In our state, the *lis pendens* doctrine has its foundations in common law and remains mostly there. In our state the only procedural reference to *lis pendens* is set out in Md. Rule 12–102, which contains no substantive modification of the common law. Except for the statute in respect to divorce cases above noted, the Maryland General Assembly has not seen fit to enact further statutes modifying *lis pendens* as other states have done. Accordingly, Maryland's jurisprudence in respect to *lis pendens* generally has been developed through our case law.

In *Angelos v. Maryland Casualty Co.*, 38 Md.App. 265, 268, 380 A.2d 646, 648 (1977), this State's intermediate appellate court explained:

"The chancellor entered judgment on behalf of Maryland Casualty Company under the doctrine of lis pendens. Lis pendens literally means a pending action; the doctrine derives from the jurisdiction and control which a court acquires over property involved in an action pending its continuance and until final judgment is entered. Under the doctrine, one who acquires an interest in the property pending litigation relating to the property takes subject to the results of the litigation. *It is clear that the doctrine has no application except where there is a proceeding directly relating to the property in question, or where the ultimate interest and object of the proceeding is to subject the property in question to the disposal of a decree of the court.*" (Emphasis added.)

Accordingly, it is clear in Maryland that generally, prior to judgment, the nature of the action must be such that it directly involves the property, if the property is to be subject to a *lis pendens*.

As early as *Applegarth v. Russell,* 25 Md. 317, 327 (1866), involving an action in the county where the real property was located, we began to apply limits to the doctrine's application. In that case, appellee argued that *"[l]is pendens* begins from the moment the bill is filed," but the Court held to the contrary, upholding a conveyance where the bill, "at the time of the purchase, did not disclose with sufficient certainty the land sought to be charged by it." *Id.* at 328. Much later, in *DeShields v. Broadwater,* 338 Md. 422, 659 A.2d 300 (1995), also a case where the pending action was in the county where the property was located and thus did not involve a "formal" notice of *lis pendens* because the action itself was required to be indexed in that county and was itself the *lis pendens* and not a mere notice, this Court discussed *lis pendens* in the context of a constructive trust. There we noted:

"The doctrine of *lis pendens* is well-established in Maryland. It literally means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment. Under the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation. Thus, '[u]nder the common-law doctrine of *lis pendens,* if property was the subject of litigation [8], the defendant-owner could transfer all or part of his or her interest in the property during the course of litigation, but not to the detriment of the rights of the plaintiff.' Janice Gregg Levy, Comment, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr,* 51 Md.L.Rev. 1054, 1056 (1992). This Court stated the same proposition thusly, in *Inloes' Lessee,* 11 Md. at 524 (quoting I Story Eq.Jur. §§ 405, 406):

'A purchase made of property actually in litigation, pendente lite, for a valuable consideration, and without any

---

8. Such as actions to remove clouds on title, actions for specific performance of contracts involving real property rights, actions involving adverse possession, dedication or prescription, custom, boundary line disputes and the like.

express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit. . . .'

See [*Permanent Financial Corp. v.*] *Taro,* 71 Md.App. [489,] 492, 526 A.2d [611,] 612 [(1987)].

. . .

"*Lis pendens* has no applicability, therefore, except to proceedings directly relating to the title to the property transferred or in which the ultimate interest and object is to subject the property in question to the disposal of a decree of the court.

"A '*lis pendens* is a general notice of an equity to all the world,' not notice of an actual lien. Consequently *lis pendens* proceedings do not technically prevent alienation; they place a cloud on title to the property. . . .

. . .

"Thus, when, after the complaint has been filed, the defendant transfers his or her interest in the property which is the subject of the lawsuit, *lis pendens* applies to subject that property to the result of the pending litigation whether or not the plaintiff is aware of the transfer. . . ."

*DeShields,* 338 Md. at 432–36, 659 A.2d at 305–06 (footnotes omitted) (some internal citations omitted). *See also Warfel v. Brady,* 95 Md.App. 1, 7, 619 A.2d 171, 174, *cert. denied,* 331 Md. 88, 626 A.2d 371, *cert. denied,* 510 U.S. 977, 114 S.Ct. 470, 126 L.Ed.2d 422 (1993); *Permanent Fin. Corp. v. Taro,* 71 Md.App. 489, 492, 526 A.2d 611, 612, *cert. granted,* 311 Md. 193, 533 A.2d 670 (1987), *appeal dismissed,* January 26, 1988; *Angelos v. Md. Cas. Co.,* 38 Md.App. 265, 268, 380 A.2d 646, 648 (1977); *Creative Dev. Corp. v. Bond,* 34 Md.App. 279, 284, 367 A.2d 566, 569 (1976); *Corey v. Carback,* 201 Md. 389, 403–04, 94 A.2d 629, 638 (1953); *Hall v. Jack,* 32 Md. 253, 263–64 (1870); *Tongue v. Morton,* 6 H. & J. 21, 23–24 (Md.1823). *But see Price v. McDonald,* 1 Md. 403, 412 (1851) (observing that claim of *lis pendens* was unavailing where the parties had prosecuted the case in an "exceedingly dilatory manner").

We have detected a general admonition that *lis pendens* must be carefully executed in order to achieve its notice aims. To this end several states have imposed—either by statute or by common law—conditions upon the doctrine that must be satisfied if it is to be invoked (as indicated, Maryland has not enacted by a statute relating generally to all cases, any limitations on the general application of the doctrine.) [9]

A delay between the defendant's filing of a notice of *lis pendens* of his suit to collect from his wife the proceeds of the sale of the home and the recording of the notice was pivotal in the case of *Aldridge v. Aldridge,* 527 So.2d 96 (Miss.1988). At least three days elapsed after the notice was filed before the clerk actually recorded the notice in "The Lis Pendens Records," during which time the notice languished in the "Instruments Left for Recording" file and the wife conveyed the property to purchasers whose lender had not found any notices or encumbrances upon the property. *Id.* at 98. In declining to enforce the husband's lien and determining that the buyers were bona fide purchasers, the Supreme Court of Mississippi stated that "Mississippi case law clearly illustrates that a lien is not obtained by the mere filing of a Lis Pendens Notice." *Id.* at 99. The court then examined Mississippi's several relevant *lis pendens* statutes, among them Miss.Code Ann. § 11–47–3 (1972), which stated:

"When any person shall begin a suit in any court, whether by declaration or bill, or by cross-complaint, to enforce a lien upon, right to, or interest in, any real estate, unless the claim be founded upon an instrument which is recorded, or upon a judgment duly enrolled, in the county in which the real estate is situated, such person shall file with the clerk of the chancery court of each county where the real estate, or any part thereof, is situated, a notice containing the names of all the parties to the suit, a description of the real estate, and a brief statement of the nature of the lien, right, or interest sought to be enforced. The clerk shall *immediately* file and record the notice in the lis pendens record,

---

9. There is now a statute we initially noted relating to divorce cases.

and note on it, and in the record, the hour and day of filing and recording."

In addition, the *Aldridge* court noted a Mississippi statute that imposes liability on a clerk's failure to perform his duties, and went on to conclude that the clerk failed to comply with the statute, holding "a lis pendens notice must be actually recorded in The Lis Pendens Records to constitute notice." *Aldridge*, 527 So.2d at 100.

In *Lawing v. Jaynes*, 285 N.C. 418, 206 S.E.2d 162 (1974), the plaintiffs allegedly had exercised their recorded option to purchase the defendant's property pursuant to the terms of the option, but when the defendant refused to convey the land, the plaintiffs instituted an action for specific performance. The plaintiffs recorded with the clerk of the court a notice of *lis pendens*, but there was a nearly seven-year delay between the time of its filing and the time it was cross-indexed by the clerk in the "Record of Lis Pendens." In the interim the defendant conveyed the land to a third party. The applicable North Carolina statute provided that the cross-indexing of the notice of *lis pendens* provided constructive notice to a purchaser of the affected property. *Id.* at 422, 206 S.E.2d at 165. Since the cross-indexing was not accomplished until after the conveyance to a third party, the court determined that the cross-indexing did not constitute constructive knowledge to them. *Id.* at 426, 206 S.E.2d at 167; *see also ABN AMRO Mortgage Group, Inc. v. Jackson*, 159 Ohio App.3d 551, 824 N.E.2d 600 (2005); *Gene Hill Equip. Co. v. Merryman*, 771 S.W.2d 207 (Tex.App.1989); *McWhorter v. Brady*, 41 Okla. 383, 140 P. 782 (1913).

■ Based on our summary review of the cases it seems clear that, at a minimum, the amalgamated requirements for a notice of *lis pendens* call for the notice to state the names of the party against whom the *lis pendens* is claimed, to describe accurately the affected property, and to explain the nature of the lien right or the interest that the person filing the notice seeks to enforce and that it be properly recorded—and indexed.

## B. Filing, Recording and Indexing Generally

A central issue to the case *sub judice* is which party should bear the burden, or possible loss, occasioned by an incorrect *indexing* of an apparently properly *filed* (although possibly mis-captioned) notice of *lis pendens*. The receiver argues "that the [Clerks'] improper indexing of the notices of lis pendens did not negate the effect of filing of said notices as to Appellants." In appellants' view, on the other hand, their inability to locate the filed but incorrectly indexed notices of *lis pendens* among the Clerks' records, prompts them to depict themselves, although they are not technically purchasers, as more akin to bona fide purchasers than to purchasers *pendente lite*.

Maryland Code (1974, 2003 Repl.Vol.), § 3–301 of the Real Property Article entitled **"Record Books"** combined with Real Property Article Section 3–302 **"Indexes,"** read together as they must be, express the intent of the Legislature in this area.

■ Section 3–301(a) *Land Records.*, provides in relevant part:

"..., the clerk of the circuit court of each county shall record every deed *and other instrument*[10] *affecting proper-*

---

**10.** *Black's Law Dictionary* defines "instrument" as:

"1. A written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate.

'An "instrument" seems to embrace contracts, deeds, statutes, wills, Orders in Council, orders, warrants, schemes, letters patent, rules, regulations, bye-laws, whether in writing or in print, or partly in both; *in fact, any written or printed document that may have to be interpreted by the Courts.'* Edward Beal, *Cardinal Rules of Legal Interpretation* 55 (A.E. Randall ed., 3d ed. 1924)." BLACK'S LAW DICTIONARY 813 (8th ed. 2004) (emphasis added).

It further defines an *inchoate instrument* as an unrecorded instrument that must, by law, be recorded to serve as effective notice to third parties.

In a *lis pendens* context, a document filed in court is an instrument if the document has a purpose beyond merely being a piece of paper. By Rule this Court has provided that the purpose of filing a notice of *lis pendens* in another county is to create constructive notice in that other

*ty* in well-bound books to be named 'Land Records', if that is the practice in the county, or on microfilm, if that is the practice...."

Section 3–302(a) *In general.,* provides in relevant part:

"The clerk of the circuit court of each county shall make and maintain *a full and complete general alphabetical index* of every deed, *and other instrument* in a well-bound book in his office...." (Emphasis added.)

Section 3–302(e)(2) provides in relevant part:

"The clerk shall rely on the instrument that is accompanied by the intake sheet for indexing of grantor's and grantee's names."

■■ A notice of *lis pendens* is intended to, and does, affect the title to property, in that its purpose is to notify any future purchaser of the title to the property that they will take the property subject to the result of the pending litigation. Because a notice of *lis pendens* affects title to real property, it is required by statute to be recorded *"in well-bound books"* to be named "Land Records." If it is required to be recorded in the Land Records, as we hold it is, then it comes under the provisions of the statute that require it to be maintained in a complete alphabetical index. The Legislature has required *any* instrument affecting title to real property, to be both recorded *and to be indexed.* The stated purpose of Md. Rule 12–102 is to facilitate the creation of constructive notice in respect to any action that "affects title to ... real property." Section (a) "Scope." This Court's adoption of Rule 12–102, and its language as to filing, must be considered in light of the requirements of the statutes and common law it was intended to facilitate, and thus must be read broadly as incorporating the indexing (and other) requirements of the various statutes.

---

county of potential liens or encumbrances on the property in the county where the notice is filed, arising out of a case in another county. A Notice of *Lis Pendens* is intended to, and does, create a cloud on title to property. A notice of *lis pendens* therefore, is an instrument affecting property. It is thus, also an instrument for the purpose of the recording and indexing statutes.

Were the Court to hold that because the Rule does not contain a direct indexing requirement, it affords notice without indexing, we in effect, would overrule the statutory requirement that instruments affecting title must be indexed. Such an interpretation would change the statutory requirements for the placing of notices, i.e., instruments affecting title to real property in the land records of a county—and that they be indexed.

■ It is helpful to understand one of the important purposes of recording and indexing in the first instance. Instruments of conveyance (including mortgages) were, under the common law, valid as between the grantor and grantee even if never recorded. Recordation systems, as they relate to real property, evolved in order to insure that owners of property were not able to convey or mortgage the same property to several people at the same time. A primary purpose of the recording and indexing statutes that came into being was to provide a way to give notice to purchasers, mortgagors, lien holders and the like, of the prior conveyances of, or encumbrances on, the property of a particular person. Recording and indexing was not necessary to determine title to property as between the seller and buyer but only to determine priorities as between subsequent claimants to title interests, i.e., third parties, such as the banks in the instant case.

This Court long ago recognized the importance of recording *and indexing* in the case of *Plaza Corp. v. Alban Tractor Co.*, 219 Md. 570, 583, 151 A.2d 170, 176–77 (1959), where we were concerned with a legislative enactment relating to the recording and indexing of certain instruments in Baltimore County. A provision of the Baltimore County Code provided "that in cases where an instrument affects title to, or any interest in, both land and personal property that the clerk 'shall include a notation that such instrument has been recorded among such Land Records . . .'" in the chattel index. *Id.* at 583, 151 A.2d at 177. As relevant to the instant case, the Court went on to note that the statutory provision "makes the entry or notation in the chattel index constitute an essential part of the actual

recordation of the instrument in the Chattel Records." *Id.* We noted our reasons, reasons equally relevant in the real property indexing case *sub judice:*

"If this were not so, we would have this anomalous situation: We would have a registry statute requiring the clerk to keep a set of Land Records, a set of Chattel Records and a separate general alphabetical index for each; when an instrument is presented for record that covers both real and personal property, the statute provides that it shall be spread upon the Land Records and *not* upon the Chattel Records, but a notation thereof shall be made in the general index of the Chattel Records, which shall have the same effect as though it were spread in full upon the Chattel Records; *if this [were to] be treated as a mere failure to index and not as a lack of a complete recording, there would be no possible way for a subsequent prospective purchaser or creditor to locate the instrument dealing with [the] personal property without a search of the Land Records, something that no one would do. . . .*

". . . . The clerk spread it upon the Land Records and the general index of the Land Records, but failed to comply with the statute in noting the same in the general index of the Chattel Records. *Who must suffer for the clerk's mistake?* There is a division of opinion in this country as to the correct answer to this question. Some cases hold that the grantee [In the case *sub judice* the Receiver is the person seeking to establish his priority and is in essence in the position of what the *Plaza Corp* Court refers to as a "grantee" [11]] controls the instrument; *he can record it or not as he pleases; he, alone, has the right and the opportunity to see that it is properly recorded by the registration officer; hence, if he fails to give the notice required by law, he must bear the consequences, and third persons need not go beyond the records to ascertain the title of the property*

---

11. The document in controversy in the present case is the "Notice of *Lis Pendens,*" not the subsequent mortgages. In this case Moses Karkenny and the Receivers are parties to the case from which the *lis pendens* is alleged to have arose and the banks are "third parties."

*involved.* Other cases, under certain statutes and construction of statutes, which make instruments operative as records from the time they are filed for record, hold to the contrary, and state that any error occurring after the instrument is filed for record is chargeable to third persons. . . . 4 American Law of Property, sec. 17.31; 5 Tiffany, *Real Property,* (3rd Ed.), sec. 1273.

"Tiffany, *op. cit.,* and the *American Law of Property* place Maryland in the first category with the case of *Brydon v. Campbell,* 40 Md. 331 [(1874)]. There, a deed conveyed a *four-tenths* portion of a tract of land. By mistake, the clerk transcribed it upon the register as a *fourteenth* part thereof. *This Court held that a third party was only chargeable with constructive notice of what the record disclosed.*

"The *American Law of Property, supra,* at page 620 agrees with the *Brydon* case, and points out with force and persuasive reasoning that sound logic implies that . . . the record itself is the only evidence upon which a later purchaser is to rely, or which should be considered in deciding whether he has record *notice;* otherwise a purchaser's only safe course would be to insist upon an opportunity to inspect all of the original instruments in his grantor's chain of title, *something that is entirely impractical.*[12] We therefore hold that as the notation of the Plaza mortgage in the general Chattel Record index was an essential part of its recordation and the clerk failed to note it in said Chattel Record Index, he failed to 'record' the same in the Chattel Records, *which rendered it ineffective to constitute constructive notice to third parties.*"

*Id.* at 583–585, 151 A.2d at 177–178 (some emphasis added); *accord Waicker v. Banegura,* 357 Md. 450, 745 A.2d 419 (2000).

---

**12.** Impractical because it would require a purchaser to acquire the original instruments from all predecessors in title. Many of them may be deceased, their current addresses may be unknown, after the property was conveyed the sellers may have destroyed the old original documents.

One of the issues in *Brydon, supra,* involved an issue extremely similar to the present issue as to who should bear the burden of mistake in respect to mistakes made by a clerk in the recording process. It involved who, if anyone, would bear the risk when the clerk manually copied a deed presented for record.[13] We initially noted, "[b]ut it is very clear that such notice can only be of what the record disclosed." *Brydon,* 40 Md. at 337. When copying from the original document, the clerk had written in the land records that the particular instrument conveyed:

> " '[T]he *undivided fourteenth part* of the land. This, it seems, resulted from a mistake of the clerk, which was corrected long afterwards, so as to read *four-tenths,* according to the words of the original deed; this correction was made as late as August 7th, 1865, after the commencement of this suit. So far, therefore, as Brydon is affected with constructive notice from the land records, it can only be, of an interest in Governeur Jr., to the extent of *one fourteenth part.*' "

*Id.* at 338. Because of the Clerk's mistake, the Court held that the third party was only on notice of an encumbrance as to a fourteenth part interest instead of a four-tenths interest. Thus the risk was on the party filing the instrument.

*Frank v. Storer,* 308 Md. 194, 517 A.2d 1098 (1986) and *Standard Finance Co. v. Little,* 159 Md. 621, 152 A. 264 (1930) are cases that on the surface might appear to support the position of the Receivers. But, *Standard Finance* was not a case of priorities between parties asserting interests in real property, but a claim by a party against a Clerk of Court, where the party had lost his priority because of mis-indexing. The party in question was suing the Clerk for damages and, thus, its language as to burdens to correct mistakes in indexing as between parties was dicta. The *Frank* case was based

---

**13.** Generally, this particular issue would not arise today in that the bodies of documents are not copied manually. Entries in indexes, however, by their nature are made manually, albeit aided perhaps by mechanical and/or electronic devices.

solely on the language of *Standard Finance*. In relying on the *Standard Finance* case in *Frank*, we stated that we were doing so, at least in part, because the Legislature had not changed the statute subsequent to our *Standard Finance* case. We were mistaken. The Legislature had in fact changed the statute.

At the time of *Standard Finance*, the statute as to *recording* included the phrase "and other instruments affecting the title," but the provision in respect to indexing did not. Md. Code (1957, 1966 Repl.Vol.), Art. 17 § 50. At that time the indexing statute used the language "and other *conveyances* of record" instead of "instruments affecting title or instruments of record." Md.Code (1957, 1966 Repl Vol.), Art. 17 § 54 (emphasis added). Notices of *lis pendens*, although instruments, are not conveyances—they convey nothing. That older language in the indexing statute ("conveyances") stayed the same through the 1966 Replacement Volume. By the time of the 1981 Replacement Volume, however, Article 17 section 54 had become § 3–302 **"Indexes"** of the Real Property Article. In the process of this re-enactment of the provisions relating to recording and indexes, the language of the section relating to indexes was changed, and as changed was consistent with the recording section. It used "and other instrument" instead of "conveyances of record." Md.Code (1974, 1981 Repl.Vol.), § 3–302(a) of the Real Property Article.

Accordingly, when this Court in overruling the Court of Special Appeals decision in *Frank v. Storer*, 66 Md.App. 459, 504 A.2d 1163 (1986) based its holding on the fact that the Legislature had not changed the statute in a relevant manner since the time of *Standard Finance*, albeit the Court was referring to an express allocation of risk, we simply were not correct. At the time of *Standard Finance*, only conveyances were required to be indexed, albeit instruments affecting title were required to be recorded. Today, instruments affecting title, including notices of *lis pendens*, are required to be recorded *and indexed*—the indexing provisions require that any instruments in the land records must be

indexed. In that event, our recent *Waiker* case clearly controls in spite of *Frank* and *Standard Finance.* Indexing mistakes should be at the risk of the person who had the ability to insure that the document was indexed correctly—the filer.

We distinguished both *Standard Finance* and *Frank* in *Waicker* and *specifically* noted they were not controlling there. *Waicker,* 357 Md. at 462 n. 9, 745 A.2d at 424 n. 9. The *Standard Finance* and *Frank* cases were based on far different contexts and, as applicable here in a case between competing priorities, can not be read as overruling the specific prior holdings of *Plaza Corporation* and *Brydon.* To the extent that *Frank* and *Standard Finance,* conflict with the present case or with *Waicker,* they are overruled.

We continue by offering a brief description of the process of examination of titles, i.e., the examination of land record instruments, which is a relatively laborious process that changed little during the first centuries following this nation's founding. The importance of correct indexing being a necessary part of filing and recording of instruments affecting property—if the purpose of the document is to afford constructive notice—can only be understood, if one fully understands the nature of the title examination process. In this respect, we refer not to the commercial operators of title houses, but to the primary examination of titles located in land records, upon which all purchasers and insurers basically rely.[14]

A title examiner goes to the place where the land records and other applicable records repose. He or she develops a chain of title, i.e., a list of the people who have owned the

---

14. A similar process is utilized in the creation of title plants. The plants use massive resources to duplicate the land records of a particular jurisdiction by examining the titles and then continue to index all documents as they are received each day. They then use this information to create various means of cross-referencing—geographical indexes and the like. This process was explained to some degree in *Lake Central School Corp. v. Hawk Development Corp.,* 793 N.E.2d 1080 (Ind.Ct.App.2003).

property for the last specified period of years. The property, or various fractional interests in it, may have been owned by one person or a hundred persons over that particular period of time. Then, during the periods in which each owner owned the property, or any portion of it or interest in it, the examiner must check to see whether during the period that particular owner owned the property, he or she had sold or mortgaged his or her interest in it to someone other than the person above him in the chain of title (in essence selling or mortgaging the same property more than once) or whether during the period of time each particular owner owned the property any judgments were rendered against such respective owner or whether, during that period any suits were filed anywhere that might constitute *lis pendens* against the respective owner and to the property while that owner owned it.

As a practical matter it is impossible in a lifetime to examine every original document of every kind ever filed in the land and other records, which would be necessary if the buyer or lender is to be assured that the property is lien free and is owned by the person who is selling it, *if the buyer or mortgage lender is required to be responsible for non-indexing or mis-indexing.*

Presume that an owner in 2000 had owned a subject property in Baltimore City for four years. In the year 1999–2000 there were 31,000 civil cases alone filed in that jurisdiction; in the year 1998–1999 there were 32,742 civil cases filed; in 1997–1998 there were 28,119 civil cases filed; and in 1996–1997 there were 26,877 civil cases filed in the Circuit Court of that jurisdiction. Altogether, during the period our seller owned the property there were 118,737 civil cases filed. Additionally, the title examiner under such circumstances would have to examine all cases pending at the beginning of the respective period of time—in the example given there were an additional 107,920 civil cases pending in that jurisdiction at the beginning of 1996–1997. If mis-indexing were to be at the risk of the buyer or, as in the present case, at the risk of the banks who are the third-party mortgagees, the person examining the title would have to personally read all the papers filed

in those 226,658 cases in addition to federal lien dockets, tax records and the millions of other documents in the land records in order to insure that none of them constituted *lis pendens* against the property and to verify that nothing adversely affecting title occurred while the last owner (seller) held complete and clear title to the property.[15] Then, once that is accomplished (which is impossible in the first instance) the title examiner would have to do the same thing in respect to the period of time that each prior owner owned the property, millions of additional documents (usually for a period of at least 60 years at the time the writer was examining titles).

Relying on indexing is the only thing that makes it possible for title attorneys to limit the examination of documents to those that are relevant, generally those cases and documents indexed in the grantor's or debtor's name. If indexing were to be eliminated, the marketability of titles would be seriously compromised and the entire system of property in this country might collapse.

The contrary position, i.e., indexing is not required, would result in millions of documents having to be reviewed to certify a clear title. It would be an impossible task. With indexing as a requirement of the process as provided for by statute, the title examiner needs to review only the documents reflected on the appropriate index entries under the respective owners, and prior owners' names, to verify that the documents identified on the indexes do, or do not, affect title. It is still tedious but it can be, and regularly is, accomplished.

The most important public records relating to the examination of land titles **are the indexes.** Everything depends on indexing. *Without indexing nothing works.* The Legislature has recognized that importance by requiring indexing as a vital part of the recording of instruments affecting title to real property.

---

**15.** The statistics as to the filing of civil cases are gleaned from the *Statistical Abstract of the Courts* for the respective periods.

The court in *Coco v. Ranalletta*, 189 Misc.2d 535, 733 N.Y.S.2d 849 (N.Y.Sup.Ct.2001) in determining that a name indexed with an additional letter did not provide constructive notice of the senior mortgagee's lien, stated:

"[A]lthough the name Ranaletta and the name Ranalletta may appear and sound similar, there are actually 25 letters of the alphabet separating the two names. If the alphabetical method of indexing, as provided in [the statute], were interpreted to include methods such as searching by use of the first several letters of a person's last name or a phonetic search, uncertainty would be introduced into the recording and searching of land titles and liens. Such a system would depend, in part, upon the community standards for title examination, which has been held to be relevant only in an action brought against a recording officer or title examiner, but irrelevant on the question of constructive notice."

*Id.* at 540, 733 N.Y.S.2d at 853.

In the case of *Vicars v. Salyer*, 111 Va. 307, 68 S.E. 988, 989 (1910), the Supreme Court of Virginia early on observed that, although not explicitly stated in that state's *lis pendens* statute, indexing was an integral part of the docketing of the *lis pendens*. Were it not a crucial component, the remedial aspects of the *lis pendens* statute would be thwarted:

"Because of the hardship which frequently resulted from the enforcement of the rule, especially to bona fide purchasers, statutes have been passed in England and in many of the states of this country intended, as far as practicable, to remedy the mischiefs of the old law, or to lessen its hardships. One of the objects of the Legislature in enacting [the *lis pendens* statute] manifestly was to provide a means by which a person desiring to purchase land might by an examination of the deed books in the county where the land was situated ascertain whether or not there was pending a suit which might affect the title to the land. This object could not be accomplished by the mere leaving of the memorandum required with the clerk. An examination of the deed books would disclose nothing in regard to the pending suit, unless, as the section provides, that memoran-

dum was spread upon or recorded in the deed book. As before stated, if indexing the lis pendens after it has been spread upon or recorded in the deed book is not an essential part of its docketing, then copying the memorandum in the deed book is not, for the language of the section cannot be mandatory as to the one and merely directory as to the other."

In an action to quiet title, *Palamarg Realty Co. v. Rehac*, 80 N.J. 446, 404 A.2d 21 (1979), the New Jersey Supreme Court opined, in respect to the New Jersey Recording Act which compels the recording of all instruments affecting title, on the notice provided by a prior recorded deed:

"The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a *'reasonable'* search of the particular chain of title. That is, a prospective purchaser need only search the records to discover conveyances or other significant acts of an owner from the date the deed into that person was recorded until the date he relinquishes record title."

*Id.* at 456, 404 A.2d at 26 (emphasis added).[16]

The holding of *Palamarg Realty* was invoked by the plaintiffs in *Manchester Fund, Ltd. v. First American Title Ins. Co.*, 332 N.J.Super. 336, 753 A.2d 740 (Law Div.1999), a case in which the United States sought civil forfeiture of a property purportedly purchased with money acquired through drug trafficking. The government filed a notice of *lis pendens* that was indexed in the county records under "United States of America" instead of under the last name of the property's title holder (similar to the situation in the present case). Soon thereafter, the title owner ceased paying property taxes and

---

16. In the instant case, the receiver stated in interrogatory responses that a careful and complete examination of all the records maintained by the Clerk of the Circuit Court would have revealed the filing and the existence of the notice of *lis pendens*. Given the volume of filings in Montgomery County and in Prince George's County, this Court notes that such an exhaustive examination, without the aid of proper indexing, is unlikely to be a *reasonable* undertaking.

Manchester Fund purchased the tax lien on the property and sought title insurance from First American Title Insurance Company and another title company. The title policy included a rider which disclaimed certain defects, liens or encumbrances on the title. Having learned of Manchester Fund's summons and complaint for forfeiture of the right to redeem, the United States contacted Manchester Fund and informed it of its forfeiture claim, but the Fund failed to notify the title companies until after the government brought an action to divest Manchester Fund of title.

The government cited its notice of *lis pendens,* which had not been discovered through the regular and customary title search process, in support of its effort to strip Manchester Fund of title. Observing that "the recorded, but the mis-indexed Notice of *Lis Pendens,* did not provide constructive notice of the adverse claim of the United States," *id.* at 347, 753 A.2d at 746, the court held that consequently neither the title insurers nor Manchester Fund had the ability to discover the mis-indexed notice of *lis pendens.* The court determined, however, that Manchester Fund must bear the loss because the policy was actually issued at a time when Manchester Fund had already been actually alerted to the government's prior claim. In other words, it had actual notice. Most notably for purposes of the instant case, the *Manchester Fund* court stated, "A successful title search depends on the correct spelling and indexing of each owner and claimant in the chain of title." *Id.* at 344, 753 A.2d at 744.

Similarly, in *Jones v. Parker,* 107 N.J.Super. 235, 258 A.2d 26 (App.Div.1969), an intermediate appellate court determined that a judgment mistakenly indexed under the name "Ace Parker" was sufficiently dissimilar from the name of "Asa Parker" so as to fail to constitute notice of a judgment against an Asa C. Parker. The court observed that in that state (as is the case in Maryland) a trial court "judgment becomes a lien upon real estate from the time of the actual entry of such judgment on the minutes or records of the court" and noted that case law had interpreted New Jersey's judgment recording statute to "[hold] that unless the judgment is entered

against the same name, both the Christian or first name and surname, as that in which the record title stands, it does not constitute notice to a subsequent purchaser or encumbrancer and is not a lien on the real estate." *Id.* at 240, 258 A.2d at 29. The court then clarified its determination:

"In reality, a judgment against Ace Parker could be against anybody named Parker and the searcher would have no way of knowing what that first name might be. The cases recognize that slight variations in names, which do not have the capacity to mislead, will not vitiate the judgment creditor's lien. Thus, the abbreviation Edw. for Edward would be sufficient to give constructive notice as to the identity of the judgment debtor. So too, the entry of a judgment against A. Parker might be sufficient to alert a searcher who was running down the name Asa Parker. But, where there [are] dissimilar names, no obligation is imposed on the title searcher to go behind what the record judgment shows on its face, particularly where the last name being searched is a common name like Jones, Smith or Parker."

*Id.* at 241, 258 A.2d at 30. *See also Venetsky v. West Essex Bldg. Supply Co.*, 28 N.J.Super. 178, 187, 100 A.2d 291, 295 (App.Div.1953) (stating that "a judgment must be properly docketed [in an index] by the correct Christian name and surname of the judgment debtor" to constitute notice to subsequent bona fide purchasers or encumbrancers).

In *Federal National Mortgage Ass'n v. Levine–Rodriguez*, 153 Misc.2d 8, 579 N.Y.S.2d 975 (N.Y.Sup.Ct.1991), a case closely on point with the case *sub judice*, and a case which addressed an improperly indexed earlier mortgage, a New York supreme court examined that state's "tortured and evolving" case law in respect to the indexing of real property instruments, which theretofore had "placed New York among those states which hold that the filer of the mortgage instrument need not stand by or later investigate to see if the document was properly recorded, since delivery of the document to the recorder is itself sufficient." *Id.* at 11, 579 N.Y.S.2d at 978. A 1924 amendment to New York's real property recording statute had altered the law so that an

" 'error in indexing prevent[ed] the record from constituting constructive notice of the filed instrument,' " *id.* at 15, 579 N.Y.S.2d at 980, and the change prompted the *Federal National Mortgage Ass'n* court to query the wisdom of distinguishing between *non-indexing* and *mis-indexing.* That court observed that the indexing requirement should "be viewed as mandatory and nonfeasance is to be equated with misfeasance since negligence is negligence whether the act be of omission or by commission, active or passive." *Id.* at 17 n. 2, 579 N.Y.S.2d at 981 n. 2. The *Federal National Mortgage Ass'n* court rejected the notion that the mere delivery of a deed for filing was sufficient and held that, in the absence of misfeasance or malfeasance, "the harm, if any, in cases of this kind vis-à-vis competing mortgagees must be borne by the party who presents the instrument for recording for, as it has been noted, that is the one party who can readily ascertain if the instrument was properly indexed as part of recording." *Id.* at 16, 579 N.Y.S.2d at 980. A commentary, cited by the *Federal National Mortgage Ass'n* court, supports that case's outcome:

> " 'A cogent reason underlying the rule which places upon the grantee of a deed or other instrument the responsibility for seeing that the record made of the instrument is accurate is that one who files a paper for recording always has it in his power to examine the records and satisfy himself that his paper has been duly and accurately recorded, while it is impossible for a prospective purchaser or creditor to anticipate and inquire about and ascertain the innumerable forms which the negligence or mistakes of the [recording] officer may assume.' "

*Id.* at 11, 579 N.Y.S.2d at 977–78 (citing 66 Am.Jur.2d, Records & Recording Laws, § 130, p. 421).

In a pair of 1936 Pennsylvania cases, the supreme court of that state opined on the importance of indexing. *In re Tourison's Estate,* 321 Pa. 299, 184 A. 95 (1936), addressed the result when a creditor's action against the executors of an estate was not indexed for more than a year after the commencement of the suit. When the prothonotary discovered

the omission, he indexed the action *nunc pro tunc.* In ruling that the lower court had proper jurisdiction to rule on the propriety of the notary's actions, the Supreme Court of Pennsylvania noted that revisions of the applicable statute had seen fit to include provisions making necessary the indexing of the action in the judgment index. *Id.* at 302, 184 A. at 96. "The purpose of the indexing was to charge prospective purchasers or third parties dealing with a decedent's land with notice that it was subject to certain claims." *Id.*

Concomitantly, in *Negley v. Reiser,* 324 Pa. 190, 188 A. 123 (1936), the appellee sought to recover from an estate for personal injuries sustained though the negligence of the deceased. The appellee filed his action, but it was not indexed as provided in the applicable statute. The court ruled that the appellee could not claim against decedent's real estate because "[i]ndexing is as essential to the preservation of a creditor's right against a decedent's realty as is the commencement of the action." *Id.* at 192, 188 A. at 124.

Several years later, the Supreme Court of Pennsylvania made a definitive statement as to the burden of assuring correct indexing in *Commonwealth v. Roberts,* 392 Pa. 572, 586, 141 A.2d 393, 400 (1958), wherein that court stated, "it is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed."

In a suit by a creditor against a title company, the court in *Chemical Bank v. Title Services, Inc.,* 708 F.Supp. 245 (D.Minn.1989), amalgamated the holdings of several cases addressing which party is charged to assure the accuracy of a filed instrument:

> " 'Variations in the debtor's listed name are of particular concern, because that name is the key to the indexing upon which the entire notice system relies.'
>
> "Thus, the burden is properly on the creditor to make a proper filing and the creditor bears the risk of misfiling.[17]

---

17. In that case one mortgagee (creditor, bank, etc) was the filer of the mis-indexed mortgage. The case concerned the priorities between mortgages.

> The filing clerk is required to index the statement under the name he found in it and is not required to engage 'in some second guessing.' *In re Brawn,* 6 U.C.C.Rep.Serv. 1031, 1036 (Bankr.D.Me.1969) (Brawn misspelled Brown). Permitting excessive latitude in the accuracy of a filing impermissibly shifts the burden from the creditor [who filed the instrument] to the searching party. Accordingly, this court declines to impose a duty on searchers to search under possible misspellings of a debtor's name. Such a duty would undermine the purpose of the notice filing system by 'promot[ing] careless filing' and 'invit[ing] deceptive practices.' "

*Chemical Bank,* 708 F.Supp. at 249 (some citations omitted).

The Supreme Court of Iowa held an earlier judgment lien on property junior to a subsequent mortgage, where the judgment against "Ellen Desney" had been indexed under the name of "Helen Desney." *Thomas v. Desney,* 57 Iowa 58, 10 N.W. 315 (Iowa 1881). Thus, the subsequent mortgagee could not be charged with having constructive notice of the judgment because of the indexing error. The court ruled that it was immaterial whether the mortgagee actually examined the index book. "He was bound by whatever appeared in said book, whether he examined it or not. He was not bound to examine it, and, in such case, is only chargeable with notice of what it contains." *Id.* at 317. The same court reached a similar holding in *Parry v. Reinertson,* 208 Iowa 739, 224 N.W. 489 (Iowa 1929), where the deed was indexed showing as the grantee, the party that actually was the *grantor*—a situation very similar to the captioning of the notice in the present case. The *Parry* court stated that a deed "requires the filing, the recording, and proper indexing to afford constructive notice. Without proper indexing, there is no constructive notice of the rights of the mortgagee or grantee." *Id.* at 492.

We observe that some states have held that the party filing the notice is not responsible for another's indexing and recording mistakes or omissions. *See Preece v. Hardin,* 253 Ky. 226, 69 S.W.2d 361, 362 (Ct.App.1934), *Guaranty State Bank of*

*Fort Worth v. La Hay,* 98 Okla. 29, 224 P. 189, 190 (1924), and *Sykes v. Keating,* 118 Mass. 517, 519–20 (1875).

We decline to adopt the view taken by these jurisdictions that relieves the person seeking to record the instrument or file the lien from the burden of assuring the document's proper recording and indexing.

### C. Mis-indexing

Maryland's general indexing requirements are found at Md.Code (1974, 2003 Repl.Vol.), § 3–302(a) of the Real Property Article, which provides:

" § **3–302. Indexes.**

(a) *In general.*—The clerk of the circuit court of each county shall make and maintain a full and complete general *alphabetical index of every deed, and other instrument in a well-bound book in his office.* The index shall be both in the name of each grantor, donor, mortgagor, and assignor, and each grantee, donee, mortgagee, or assignee. It shall include the book and page of the recordation of every instrument designating these names. The clerk shall index every deed or other instrument retaining a vendor's lien both as a deed and as a vendor's lien, in the same manner as mortgages are indexed." [Emphasis added.]

We have gleaned from the various cases of other states' requirements that a notice of *lis pendens,* in order to provide constructive notice, must be current, must directly relate to a disputed property, and must describe the property to a sufficient degree to identify the affected property and, generally, must be properly indexed. A notice which cannot be discerned or found, is no notice at all.

The question at the crux of the instant case is who should bear the loss when the notice intended by *lis pendens* is inadequate as the result of an indexing error. The illustrative case in Maryland on the results of mistakes in indexing is this Court's recent opinion in *Waicker v. Banegura,* 357 Md. 450, 745 A.2d 419 (2000), in which the judgment in favor of appellants, alleged to constitute a lien against appellees' real

property, was indexed under "Banegu*na*" instead of "Banegu-ra." [18] The Clerk of the Circuit Court for Baltimore County mailed a copy of the notice of recordation to the Waickers showing the incorrectly indexed judgment. The Waickers took no action to correct the mis-indexing. When the Banegu-ras later contacted Mystic Investments, Inc., in order to refinance their property and to satisfy other judgments, a search by Mystic revealed no judgments entered against the Baneguras. After the refinancing transaction was completed, the appellants sought to enforce their judgment and contended it had priority over Mystic's Refinance Deed of Trust based on the earlier filed notice. This Court affirmed the ruling of the Circuit Court for Baltimore County that Mystic had a priority interest over appellants because the indexing error caused appellants' judgment lien to fail to attach to the property. In *Waicker* we concluded:

"We hold that notice will be found for judgment liens against a particular property, which are indexed under incorrect or misspelled names only when the facts and circumstances are such that the subsequent party has *actual* knowledge that the judgment is indexed under an incorrect or misspelled name, or has *actual* knowledge that an owner of property being subject to search has, or is commonly known by, the alternate name."

*Waicker*, 357 Md. at 477, 745 A.2d at 433. Our additional *Waicker* explanation is instructive in the instant case:

"A party who records a judgment in a judgment index has the duty of ensuring that the name entered into the index is spelled correctly and indexed correctly in order to protect the priority of their lien. Future persons involved with the

---

**18.** It is somewhat ironic that, in light of the fact that it was the misspelling of the appellee's name in *Waicker v. Banegura* that prompt-ed the confusion at the heart of that case, appellants in the present case have twice in their briefs written the name of this pivotal case as *"Waicker v. Banequra."* Thus, it seems that we cannot overstate the admonition—the party seeking to establish the notice is responsible for assuring its precision. That is what we intend *via* the holding of the case *sub judice.*

property simply have no way to ensure the accuracy of indexing."

*Waicker,* 357 Md. at 479, 745 A.2d at 434. We see no reason why a lesser standard should apply to notices of potential liens than applies to notices of actual liens.

In the present case, the lenders urge that this Court must consider "whether the mere filing of the suits [in Montgomery County and in Prince George's County] with respective clerks is sufficient to establish constructive notice on the part of the two Appellants." Appellee contends that such a position overlooks the express language of Md. Rule 12–102(b) which requires only *filing* of the notice of *lis pendens* and that is precisely what the Receivers did. This Court undertook a similar examination in *Waicker* wherein we summarized the recording and indexing provisions of Md.Code (1974, 1996 Repl.Vol.), § 3–302(a) of the Real Property Article, and explained:

"The system of indexing and recording judgment liens is designed, at least in part, to provide an organized and efficient method by which the general public can effectively determine whether there are money judgments that act as liens on a particular parcel of land. In the absence of actual knowledge, indexing and recording give constructive notice of any and all liens that may affect real property. To promote this goal, judgment liens are indexed and recorded alphabetically by surname. If there is more than one judgment indexed under the same surname against different persons, then they are organized alphabetically by first name. Additionally, if there is more than one judgment indexed under the same surname and first name against different persons, they are organized alphabetically by middle name. In other words, indexing and recording is done in basic alphabetical order. *See* Md.Code (1974, 1996 Repl. Vol.), § 3–302(a) of the Real Property Article ('The clerk of the circuit court ... shall make and maintain a full and complete general alphabetical index of every deed, *and other instrument* in a well-bound book in his office.' (Em-

phasis added.)). The indexing requirement of alphabetizing of names in judgment indexes is the foundation by which judgment liens are researched. The reason is simple. If a judgment is not indexed in the proper fashion, i.e., in alphabetical order, a searcher may never find it."

*Waicker,* 357 Md. at 463–64, 745 A.2d at 426.

The appellee urges this Court to affirm the Circuit Court's determination:

"Rule 12–102 (b) having been completely and correctly complied with so as to perfect constructive notice of the lis pendens, and no other requirements being set forth in either the Maryland Rules or in any Maryland statute ... this Court should uphold the ruling of the Circuit Court."

The Receiver emphasizes the fact of his proper and strict compliance with the stated language of Md. Rule 12–102(b) and he observes that "[t]he Rule makes no reference to the indexes nor does it place any condition on the creation of constructive notice pertaining to the indexes." That is, according to appellee, there is "no additional requirement for indexing of notices of lis pendens." It is only the *filing,* according to appellee, that provides the constructive notice, not the *indexing.* We disagree.

When the constructive notice is not realized as intended, and cannot be reasonably discerned because of improper indexing, the constructive notice is never manifested. As to the triumvirate—the *lis pendens* filer, the clerk, and the party to be affected by the notice—at the time the *lis pendens* is filed, only one party has *no* power to ensure that the *lis pendens* is filed and indexed correctly and that is the future party for whom the notice is intended prospectively. He, she or it may not even be in existence at the moment the notice of *lis pendens* is filed but mis-indexed.

According to the appellee, the lenders have confused constructive notice with actual notice, only the former of which is provided through Md. Rule 12–102(b). This position, if correct from a technical and semantic basis, equates the procedure of the Rule, in respect to filing notices of *lis pendens,*

with the *purpose* of our real property recording system which is designed to provide notice. Minimal compliance with a Rule that does not specify indexing (when relevant statutes require recorded instruments affecting title to be indexed), fails to in and of itself, achieve the aims of recording a notice of *lis pendens.* We cannot escape the fact that, in the present case as between the parties, only the receiver was in the position to *assure* that notice would be readily available, discernable, identifiable and reasonably capable of being located in the land records should any future party make an inquiry. If the party seeking to establish the lien or potential lien fails to verify its correct flow through the recording and indexing system, who then assures that it will provide notice in the future?

The appellants correctly observe that once the party seeking to establish the lien has filed the notice of *lis pendens,* "[t]he issue then evolves into what degree of diligence is required of the party seeking to give constructive notice of the lis pendens." Appellants note that section of our *Waicker* opinion where we echoed the language of the Pennsylvania Supreme Court's conclusion in *Roberts,* 392 Pa. at 586, 141 A.2d at 400, by imposing upon the party seeking to establish the lien an obligation to ensure accuracy beyond the mere filing of the notice. The *Roberts* court succinctly stated: "It is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed." *Id.* at 586, 141 A.2d at 400.

Appellee takes issue with the *Roberts'* language that appellants have borrowed from *Waicker* as appellants' apparent attempt to "graft" onto Md. Rule 12–102(b) an affirmative duty on the part of the party seeking to create a notice of *lis pendens* to ensure proper indexing. Appellee urges that no such obligation can be read into Md. Rule 12–102(b) because, unlike the statutory requirements imposed on the recording and indexing of money judgments, no similar statutory requirements exist for the indexing of notices of *lis pendens.* We disagree. The purpose of the Rule was, at least in part, to address the procedure for complying with the relevant statutes (and the common law); statutes that we have held

require indexing. The Rule and the statutes, read together, require indexing. If the particular rule had never been adopted, the statute would still have required accurate indexing. As we have indicated, Maryland statutes require instruments affecting title to be recorded and recorded documents to be alphabetically indexed.

As was stated in *Waicker*, "The only way to conduct research in the judgment lien index is by the name of the title holder of the land as that name is reflected in the land records—this is why the information included, especially the surname, needs to be accurate." *Waicker*, 357 Md. at 477, 745 A.2d at 433.

It is our explanation in *Waicker* that shapes the basis of our holding in the instant case:

"[Appellants, i.e., the party seeking to enforce their judgment] were the only party who knew or could have known, and who should have known, of this [spelling, and thus, misindexing] error; they were the only party in the position to correct this error, and they failed to do so."

*Id.* at 478–79, 745 A.2d at 419.

■■■ Thus, we hold that a party who records a judgment or a notice of *lis pendens* in a judgment index or *lis pendens* index has the duty of ensuring that the name entered into the index is spelled correctly and indexed correctly in order to protect the priority of that party's lien or potential lien. The person filing the notice does so to establish constructive notice in order to protect himself or the interests he represents. Thus, it stands to reason that the onus should be on him in order to assure that the notice is not only filed, but also recorded and indexed correctly, in order to provide the greatest protection.

Unless he has some exogenous knowledge or actual notice of other names or name variants by which to search, an examiner who searches the index for recorded instruments of judgment or other litigation, i.e., *lis pendens*, will search for the name under which the property is titled. The examiner must be

able to rely upon the ability to match the name he or she seeks with names properly recorded and *correctly listed in the index.*[19]

## III. Conclusion

The notice of *lis pendens*, in the instant case, mis-indexed under the wife's name instead of under the husband's name, did not provide constructive notice to the husband's lenders. In addition, there is no evidence in the record to suggest that the lenders had actual knowledge of the notice of lis pendens.

Similar to our holding in *Waicker v. Banegura*, 357 Md. 450, 745 A.2d 419 (2000), in the instant case, the risk of a mis-indexed or non-indexed notice of *lis pendens* falls on the person who has the power to avoid it: the party who seeks to establish the notice, i.e., the receiver under the facts of this case. We hold that the person who seeks to establish the notice of *lis pendens* by filing it, is in the position to verify the accuracy of the recording and indexing of the notice. It is this party who is charged with establishing the correctness of the recording and the indexing.

**JUDGMENT OF THE CIRCUIT COURT FOR WASH-INGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR ENTRY OF AN ORDER CONSIS-**

---

**19.** Presumably, the documents submitted to a Clerk of the Circuit Court for filing in the land records are recorded and indexed within a reasonable period of time. The records contained in the clerks' offices are public and are mandated to be available, or made available upon reasonable request, for inspection by the public. A clerk's office is not permitted to withhold documents from inspection. Maryland Code (1973, 1998 Repl.Vol.), § 2–203 of the *Courts and Judicial Proceedings* Article provides:
" § **2–203. Inspection of records.**
Unless otherwise provided by law or order of court, any person may, without charge, inspect, examine, and make memoranda or notes from any index or paper filed with the clerk of a court." When errors are identified, statutes require their correction. Accordingly, the filer of an instrument has access to the relevant records to determine the accuracy of their indexing, and a means available to cause the particular record to be corrected.

TENT WITH THIS OPINION. COSTS TO BE PAID BY
APPELLEE.

BELL, C.J., dissents and files opinion joined by WILNER
and GREENE, JJ.

WILNER, J., dissenting in which BELL, C.J. and
GREENE, J., join.

The common issue in these declaratory judgment actions is
who should bear the risk of loss when a Notice of *Lis Pendens*
arising from an action in the Circuit Court for County A is
filed with the clerk of the Circuit Court for County B in
precisely the manner this Court, by Rule, has directed, but the
clerk of the County B court fails to index the Notice properly.
Is it the person who filed the Notice as the applicable Rule
directs or a person who subsequently extends credit and
facially acquires a security interest in the property without
actual notice of the *lis pendens?*

The Circuit Court for Washington County, in which the
litigation giving rise to the *lis pendens* was pending, declared
that the loss fell on the subsequent creditor, that the Notice,
properly filed but mis-indexed, sufficed to give constructive
notice of the action from which the *lis pendens* arose, and that
the property remained subject to the control of the court.
This Court proposes to reverse that determination, improperly
in my view.

If the Court were writing on a clean slate, I would have no
problem with its ultimate conclusion that the risk of a clerk
mis-indexing or failing to index a properly filed notice of *lis
pendens* should fall on the one filing the notice. There are
good public policy reasons for placing the risk on the filer, who
is in a better position than the unknowing public to assure that
the Notice is properly indexed. The fact is, however, that the
Court is *not* writing on a clean slate. We adopted a Rule,
having the force of law, that specifies exactly what a person
must do in order to protect himself/herself in a *lis pendens*
situation. If there ever was a "precise rubric," it is Maryland
Rule 12–102(b), a Rule, in one form or another, that has been

"on the books" for 40 years. Now, the Court holds that the Rule does not mean what it plainly says—that it is not a precise rubric at all but a misleading statement by the Court upon which no reliance can be given. To make matters worse, the Court, without being asked to do so and without needing to do so, gratuitously overrules two unanimous holdings of the Court, (*Standard Finance Co. v. Little*, 159 Md. 621, 152 A. 264 (1930) and *Frank v. Storer*, 308 Md. 194, 517 A.2d 1098 (1986)) that have nothing to do with *lis pendens*, because it now decides it does not like the result reached in those cases. With respect, I dissent.

The genesis of the dispute now before us was a divorce action between Moses and Nahil Karkenny in the Circuit Court for Washington County. In that action, in an effort to preserve assets, including real estate, titled solely in Moses's name, the court appointed Curtis Hane and Preston Cecil as receivers for those assets. Some of the real estate, including a parcel identified as 2306 Greenery Lane, Unit 301, Silver Spring, Maryland, was in Montgomery County and some, including 902 Glaizewood Avenue, Takoma Park, Maryland, was in Prince George's County. The effect of that order was to place the property *in custodia legis*. The receivers held the property as agents for the court "for the benefit of the party who may be ultimately determined to be entitled." *Gaither v. Stockbridge*, 67 Md. 222, 225, 9 A. 632 (1887); *Tatelbaum v. Pantex Mfg. Corp.*, 204 Md. 360, 372, 104 A.2d 813, 820 (1954).

Pursuant to former Maryland Rule BD 2 (current Rule 12–102(b)), the receivers, on April 30, 1996 and May 1, 1996, respectively, filed a Notice of *Lis Pendens* with the clerks of the Circuit Courts for Montgomery and Prince George's Counties. Each Notice was double-captioned. The lead caption was titled "Notice of *Lis Pendens*" and identified the court in which the Notice was filed. The second caption, just below the first, correctly identified the case pending in the Circuit Court for Washington County, from which the *lis pendens* arose (Moses Karkenny, Plaintiff/Counter–Defendant v. Nahil Karkenny, Defendant/Counter–Plaintiff).

The introductory paragraph of each Notice stated that "[p]ursuant to Maryland Rule BD2, the receivers hereby provide Notice of *Lis Pendens with respect to any and all real property owned by the Plaintiff/Counter-Defendant, Moses Karkenny* in [Montgomery County] [Prince George's County] Maryland." (Emphasis added). The Notice identified the Washington County divorce action by caption and case number, listed and identified, by address or plat reference, the parcels of real estate owned by Moses in the county where the Notice was filed, advised that the Washington County court had ordered all of the assets *of Moses Karkenny*, real, personal, and mixed, placed into the receivers' custody for the purpose of preservation and liquidation, *and attached as exhibits a copy of the orders establishing the receivership and appointing the receivers*. Although anyone reading the Notices could not possibly be misled as to whose property was being subjected to the *lis pendens*, the clerks of the Circuit Courts for both Montgomery and Prince George's County, for whatever reason, indexed the Notice of *Lis Pendens* filed in their respective courts under the name Nahil Karkenny, rather than Moses Karkenny.[1]

The doctrine of *lis pendens* has its roots in Seventeenth Century English law and is well-established in Maryland. The principle, though not by name, was recognized and given effect here at least as early as 1823. *See Tongue v. Morton*, 6 H. & J. 21, 23–24 (1823). In *Inloes' Lessee v. Harvey*, 11 Md. 519, 524 (1857), this Court expressly adopted Justice Joseph Story's description of the doctrine:

---

1. The Court suggests that, by placing the correct caption on the Notice, the receivers somehow "misled" or confused the clerks as to whose property was being subjected to the *lis pendens*. Apart from the fact that appellants never complained that the Notices were not properly filed or were misleading in any way, the Court's attempt to throw blame on the receivers because they properly captioned the Notice is simply inexplicable. Does the Court mean to indicate that the receivers should have used the *wrong* caption in order not to confuse the clerks; is it declaring that clerks no longer need to read Notices of *lis pendens* (or other documents that need to be indexed) to determine how they should be indexed; or is it suggesting that clerks can index papers any way they want, without regard to what the document says?

" 'A purchase made of property actually in litigation, *pendente lite,* for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit.' "

(Quoting 1 *Story's Eq. Jur.* § 405).

That precept remains valid. In *DeShields v. Broadwater,* 338 Md. 422, 433, 659 A.2d 300, 305 (1995), we stated:

"[The term *lis pendens*] literally means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment. [citations omitted]. Under the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation."

*Lis pendens* does not directly preclude the owner of property that is in litigation from selling, leasing, or encumbering the property, but, by subjecting the interest of the buyer, lessee, or creditor to any judgment rendered in the action that affects the property, it may have that practical effect. The doctrine, in essence, measures the rights of an innocent purchaser or creditor who acquires an interest in property that is the subject of pending litigation, even without notice of the litigation, against the need to preserve the jurisdiction, power, and dignity of the court to render a judgment that will have effect, that cannot be thwarted by the litigant disposing of or encumbering the property during the litigation; and it strikes the balance, as it must, in favor of preserving the authority of the court. That is what is at stake; that is the *raison d'etre* for the doctrine. We noted in *Inloes' Lessee* and repeated in *DeShields:*

"*Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy, for, otherwise, alienation made during a suit might defeat its whole purpose; and there would be no end to litigation.* And hence arises

the maxim, *pendente lite nihil innovetur* [during litigation nothing new should be introduced]; the effect of which is, not to annul the conveyance, but only to render it subservient to the rights of the parties in litigation. As to the rights of these parties, the conveyance is treated as if it never had any existence; and it does not vary them." *DeShields,* 338 Md. at 434, 659 A.2d at 305–06, quoting from *Inloes' Lessee, supra,* 11 Md. at 524–25, which in turn quoted from Story's Equity Jurisprudence, § 406 (Emphasis added).[2]

In *Sanders v. McDonald,* 63 Md. 503, 509 (1885), the Court noted that "[t]he *lis pendens* is presumptive, if not actual notice; and the purchaser is in the same situation in which the vendor stood [citation omitted]. This is the principle that runs through all the cases, both at law and in equity." Tiffany makes the point well and succinctly:

"The doctrine of lis pendens by which one purchasing land from a party to a pending litigation concerning such land takes subject to the results of such litigation, is properly based, it would seem, *not on the theory that such purchaser has notice of the adverse claim, but rather on the principle that, pending the litigation, a party thereto cannot transfer his rights in the land to others, so as to prejudice another party to the litigation, since otherwise the decision might be utterly ineffectual."*

(Emphasis added). 5 Herbert T. Tiffany, THE LAW OF REAL PROPERTY § 1294 (3rd ed. 1939).

Given the rationale for the doctrine—preservation of the court's ability to provide relief in a pending action—whether persons who acquired an interest in the property knew of the

---

**2.** The Court also quoted with approval a more modern and succinct basis for the doctrine: "The reasons underlying the lis pendens doctrine are grounded in public policy and are self-evident: if a defendant could convey his interest in property to a bona fide purchaser during the course of litigation concerning the title of the property, a court would be limited in its ability to provide a meaningful remedy to a successful plaintiff." *Id.* at 434–35, 659 A.2d at 306, quoting from Janice Gregg Levy, Comment, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr,* 51 Md. L.Rev. 1054, 1057 (1991).

litigation or, as a practical matter, could have learned of it, was largely irrelevant, although to soften somewhat that harsh notion, courts began to apply the fiction of "presumptive" or constructive notice, arising merely from the fact of the litigation.

The doctrine of *lis pendens* is itself no stranger to litigation. Disputes over its application have been the subject of more than a dozen appeals to this Court and the Court of Special Appeals over the years, and, from time to time, this Court added various caveats and conditions. It had long been clear and was confirmed in *DeShields,* that *lis pendens* arises only when the litigation spawning it relates directly to the property itself. *DeShields, supra,* 338 Md. at 435, 659 A.2d at 306, citing *Feigley v. Feigley,* 7 Md. 537, 563 (1855) and *Applegarth v. Russell,* 25 Md. 317, 320–21 (1866). In *Sanders, supra,* 63 Md. 503, the Court held that the doctrine would not commence until the defendant in the action was served, to assure that the trial court had sufficient *in personam* jurisdiction to enter a valid judgment. That condition was confirmed in *Murguiondo v. Hoover,* 72 Md. 9, 17, 18 A. 907, 909 (1889) but was discarded in 1962 when Maryland Rule BD 1 was adopted. In *Corey v. Carback,* 201 Md. 389, 403–04, 94 A.2d 629, 637 (1953), the Court iterated earlier rulings that, to constitute *lis pendens,* the action "must be prosecuted in good faith with all reasonable diligence and without unnecessary delay." *See also Taylor v. Carroll,* 89 Md. 32, 36, 42 A. 920, 921 (1899); *Price v. McDonald,* 1 Md. 403, 412 (1851).[3]

Subject to those conditions and others not relevant here, nothing in this long common law development, from *Tongue v. Morton* in 1823 to *DeShields v. Broadwater* in 1995, spoke to how "presumptive" or constructive notice was, in any practical way, to be implemented. That did not seem to be a problem if the land in question was located in the county where the action was pending; a person intending to acquire some interest in the land could check with the Circuit Court clerk of the county

---

**3.** No allegation has been made that the divorce litigation in Washington County, though protracted, was not diligently pursued.

where the land was located to determine if anyone having an interest in the land was involved in pending litigation concerning the land. If the land was located in a different county, the ability to learn about the pending litigation was obviously more difficult, but even in that circumstance, under the common law rule, persons who acquired an interest in the property *pendente lite* were subject to the doctrine. Tiffany, writing in 1939, addressed that very issue, pointing out that "[a] suit pending in one county which affects land lying in another county of the same state has been regarded as charging with notice thereof a purchaser from a party thereto," although he noted that there were some cases to the contrary. Tiffany, *supra*, at § 1298. *See also* Annotation: *Lis pendens as affecting property in county or district other than that in which action is pending*, 71 A.L.R. 1085, 1091 (1931).

Most States eventually adopted statutes requiring the filing of some form of notice in order for *lis pendens* to operate, at least in a county other than the one where the litigation was pending. Some of those statutes specifically require those notices to be indexed; most States do not require indexing as part of the *lis pendens* statute but have general statutes dealing with indexing.[4] There is no comparable *lis pendens* statute in Maryland.

---

4. *See* Ala.Code § 35–4–130–134 (1975) (requiring Notice to be filed, recorded, and indexed); Alaska Stat. § 09.45.940 (constructive notice commences when notice is recorded); Ariz.Rev.Stat. Ann. § 12–1191 (constructive notice commences when Notice is filed, recorded, and indexed); Ark.Code Ann. §§ 16–59–101–104 (filing of Notice required for constructive notice; clerk required to index); Cal.Civ.Proc.Code § 450.20 (party to action may record notice of pendency where property situated), Cal. Gov't Code § 27250 (recorder to keep index of notices of pendency of actions); Colo.Rev.Stat. Ann. § 38–35–110 and Col. R. C.P. 105 (constructive notice commences upon recording Notice); Conn. Gen.Stat. Ann. § 52–325 (same); Del.Code Ann. tit. 25, § 1603 (constructive notice effective upon filing of Notice); D.C.Code Ann. § 42–1207 (constructive notice effective upon recording of Notice); Fla. Stat. Ann. § 48.23 (same); Ga.Code Ann. § 44–14–610–611 (*lis pendens* not effective until Notice is recorded; clerk required to index Notice); Haw.Rev.Stat. Ann. § 634–51 (constructive notice effective upon recording of Notice); Idaho Code § 5–505 (same); 735 Ill. Comp. Stat. Ann. 5/2–1901 (1987) (constructive notice effective upon filing of Notice);

In Maryland, other than the statute noted by the Majority— § 1–203 of the Family Law Article, which makes clear that *lis pendens* does not arise from the mere filing of an action for divorce or annulment—the doctrine of presumptive or constructive notice emanating from the mere existence of the lawsuit was a matter of common law, and it stood in sharp contrast to requirements imposed with respect to instruments or judgments affecting the title to or possession of land.

IN.Code Ann. § 32–30–11–1–11 (constructive notice effective upon filing of Notice); Iowa Code Ann. § 617.11–14 (constructive notice commences upon indexing); Kan Stat. Ann § 60–2201 (constructive notice commences upon recording Notice); Ky.Rev.Stat Ann § 382.440 (constructive notice commences upon filing of Notice); La.Code Civ Proc. Ann art. 3751, §§ 3750–53 (constructive notice commences upon recording of Notice); Me Rev.Stat. Ann tit. 33, § 201 (constructive notice commences upon acknowledgment and recording of Notice); Mass Gen. Laws Ann ch. 184 § 15 (same); Minn Stat. Ann. § 557.02 (constructive notice commences on filing of Notice); Mich. Comp. Laws Ann. § 565.25 (constructive notice commences on recording of Notice); Miss.Code Ann. § 11–47–1–15 (constructive notice commences upon filing and recording of Notice); Mo. Ann Stat. § 527.260 (constructive notice commences upon filing of Notice); Mont.Code Ann. § 70–19–102 (same); Neb Rev Stat. § 25–531 (same); Nev Rev.Stat § 14.010 (constructive notice commences upon recording of Notice); N.J. Stat. Ann. § 2A:15–7 (constructive notice commences upon filing of Notice); N.M. Stat Ann. § 38–1–14 (constructive notice commences upon recording of Notice); N.Y. C.P.L.R. § 6501 (constructive notice commences upon filing of Notice); N.C. Gen Stat. § 1–118 (constructive notice commences upon the cross-indexing of Notice); N.D. Cent Code § 28–05–07 (constructive notice commences upon filing of Notice); Ohio Rev.Code Ann. § 2703.27 (constructive notice commences upon recording of Notice); Okla. Stat. Ann tit. 12, § 2004.2 (same); Or.Rev Stat § 93.740 (same); 42 Pa. Cons.Stat § 4302 (constructive notice commences upon filing and indexing of Notice); R.I. Gen Laws § 9–4–9 (constructive notice commences upon filing of Notice); S.C.Code Ann § 15–11–20 (same); S.D. Codified Laws § 15–10–3 (same); Tenn Code Ann. § 20–3–101 (constructive notice commences upon recording of Notice); Tex Prop Code Ann. § 12.007 (constructive notice commences upon filing of Notice); Utah Code Ann. § 78–40–2 (same); Va.Code Ann. § 8.01–268 (constructive notice commences upon recording and indexing of Notice); Wash. Rev.Code Ann. § 4.28.320 (constructive notice commences from filing of Notice provided publication of Notice or personal service of defendant is effectuated within 60 days from the filing of Notice); W. Va.Code Ann. § 55–11–2 (constructive notice commences upon filing of Notice); Wis. Stat. Ann. § 840.10 (constructive notice commences upon filing or recording of Notice); Wyo. Stat. Ann § 1–6–107 (constructive notice commences upon filing of Notice).

From colonial times, deeds and other conveyancing instruments were required by statute to be recorded. *See* 1766 Md. Laws, ch. 14. There was a central place, in the county where the land was located, where people could find those instruments. Beginning in 1870 (1870 Md. Laws, ch. 450), the Legislature enacted statutes dealing with the situation in which actions to foreclose a mortgage, enforce a lien, or for partition affected land situated in more than one county, but the statutes were limited in this regard. They permitted the action to be filed in any county where any part of the land was located and required only that the judgment—the decree for the sale or partition of the land—be certified and recorded in the other count[ies] where the land lay. *See* former Maryland Code (1957), art. 16, § 100. There was no requirement that notice of the pending litigation be filed; nor did the statutes deal with actions other than foreclosure, lien enforcement, or partition proceedings, in which the title to or right to possess land in another county may be at issue.

The first attempt to deal with the problem in the context of *lis pendens* came with the promulgation of Maryland Rules BD 1 through 4 in 1962. The Court's Standing Committee on Rules of Practice and Procedure recognized an affinity between the constructive notice issues arising from *lis pendens*—while the action was pending—and those pertaining to judgments rendered in actions to which, prior to the entry of judgment, *lis pendens* might apply, and it dealt with those two situations together. *See* Minutes of Rules Committee for May 1 and June 24, 1959. With respect to *lis pendens,* the Rules Committee recommended, and the Court, through the adoption of the proposed Rules, agreed, first, that service of process should not be necessary to create *lis pendens,* and, through the adoption of Rule BD 1, the case law to the contrary was overruled. *See,* in particular, the Committee Note attached to Rule BD 1. With respect to constructive notice in another county, Rule BD 2 provided:

"The pendency in a county of an action affecting title to real or leasehold property located in another county shall not be constructive notice in such other county until a certified

copy of the pleading giving rise to the *lis pendens* is filed with the clerk in such other county in the same manner as an action brought in that county."

Rule BD 2 contained a cross-reference to Maryland Rule 621. That Rule, dealing with judgments in actions affecting lands in more than one county, was the one considered in conjunction with the BD Rules and was intended to replace the statute on that subject then codified in Maryland Code (1957) Art. 16, § 100. Rule 621 contained some elements not included in Rule BD 2, however—elements critical to this case. Rule 621 provided:

"a. *Proceedings—Where Filed.*

Upon the final termination of an action which affects title to real or leasehold property located in a county other than that in which the judgment was rendered, a certified copy of the docket entries, the pertinent pleadings and the final judgment shall be filed with the clerk of such other county. The clerk shall thereupon docket, *index* and record such documents pursuant to Rule 619 b (Recording of Judgment—Where Title to Real Estate Involved).

b. *Notice*

Except as to persons with actual notice thereof, no judgment in any such proceeding shall affect the title to any real or leasehold property in such other county *until section a of this Rule has been complied with.*"

(Emphasis added).

The contrast in approach between Rule BD 2, dealing with *lis pendens,* and Rule 621, dealing with judgments affecting land in another county, is striking and was obviously deliberate. Constructive notice under the *lis pendens* Rule was complete when a certified copy of the pleading was filed; the Rule said nothing about indexing. Rule 621, however, not only required the clerk to index the foreign judgment but made clear that the judgment did not affect the title to any land in the county until that was done—"until section a of this Rule has been complied with."

When considered in context, there is nothing remarkable about the broader scope of Rule BD 2. It is important to keep in mind that, up to that point, *lis pendens* applied without anything even being *filed* in the other county, much less recorded or indexed. Rule BD 2, for the first time, placed a minimal burden on the person seeking *lis pendens* to file a copy of the pleading; it required nothing more. The clerk may have had a separate duty to index the Notice, but indexing was *not* stated as a condition to constructive notice, as it was with respect to the creation of a lien by foreign judgments recorded in the county. The only other protection afforded anyone other than the person seeking *lis pendens* came from the provision in Rule BD 3 that permitted the court in the other county to terminate the *lis pendens* in that county upon application of a person in interest and for good cause.

Even the minimal burden imposed by Rule BD 2 was lessened somewhat when the BD Rules were revised, both stylistically and in substance, in the development of Rule 12–102. Section (b) of that Rule, which took effect January 1, 1997, provides:

"In an action to which the doctrine of lis pendens applies, the filing of the complaint is constructive notice of the lis pendens as to real property in the county in which the complaint is filed. In any other county, there is constructive notice only after the party seeking the lis pendens files either a certified copy of the complaint or a notice giving rise to the lis pendens, with the clerk in the other county."

Rule 12–102(b) no longer requires the person seeking *lis pendens* to file a certified copy of the complaint, although that remains an option. A "notice giving rise to the lis pendens" will suffice. More important, the same contrast with respect to judgments affecting land in another county remains. Rule 2–621 continues to provide that a money judgment does not constitute a lien on property in another county until the judgment is recorded and indexed in that county. *See* also Maryland Code, § 11–402(c) of the Cts. & Jud. Proc. Article, imposing the same condition. We gave effect to that requirement in *Waicker v. Banegura*, 357 Md. 450, 745 A.2d 419

(2000). *Compare*, however, *Frank v. Storer*, 308 Md. 194, 517 A.2d 1098 (1986) and *Standard Finance Co. v. Little*, 159 Md. 621, 152 A. 264 (1930) (holding that, as to mortgages, risk of mis-indexing falls on subsequent buyers or creditors, not on person filing the instrument for recordation), which the Court, perhaps as a throw-in, has decided to overrule.

The problem here, which the Court brushes aside, is that no such requirement or condition has ever been imposed with respect to *lis pendens*. Rather, since 1962, the only require- ment for establishing *lis pendens* in another county has been the filing in that county of a copy of the complaint or, since 1997, a Notice. The receivers here did everything they were required to do in order to preserve the jurisdiction, control, and authority of the Circuit Court for Washington County, and neither they, nor Ms. Karkenny, nor the Washington County court itself, should have to suffer because the clerks of the Montgomery and Prince George's County courts mis- indexed the Notices that were properly filed with them.

In my view, the declaratory judgments entered below were correct. If the Court prefers a different approach, it should amend Rule 12–102. That would mark a significant change in the law, however, and should not be decreed, retroactively, by judicial decision of this Court. To make the change in the manner the Court has chosen places in jeopardy Notices of *lis pendens* heretofore filed in reasonable reliance on the Rules we have adopted and that have been in place for more than forty years, and would unfairly penalize the persons filing those Notices (and their clients) for not doing what the law has never required them to do.

Chief Judge BELL and Judge GREENE authorize me to state that they join in this dissent.