PRUDENCIO H. DE MURGUIONDO, and others *vs.* DANIEL HOOVER.

*Equity pleadings—Multifariousness—Art. 16, sec. 72, of the Code, relating to Proceedings for the Sale or Partition of Lands lying Partly in one Jurisdiction and Partly in Another—Jurisdiction—Lis pendens.*

On the 30th of April, 1885, V. M. mortgaged to L. his undivided interest in real estate situate partly in Baltimore City and partly in Baltimore County. Upon the 10th of June following he filed a bill in the Circuit Court of Baltimore City against the owners of the other undivided interest, and L. as mortgagee of his interest, alleging the indivisibility of the property, and asking for a decree for its sale. Under this bill a decree for a sale of all the property was passed on the 6th of July, 1885, and under it the city property was sold, but not that situate in the county. Subsequently under *ex parte* proceedings in Baltimore County had under said mortgage, the undivided interest of V. M. in the county property was sold and conveyed to H. The property thus sold to H. became under the Act of 1888, ch. 98, a part of Baltimore City, and H. filed in the Circuit Court of Baltimore City a bill for its partition, and asking also that the decree of the 6th July, 1885, might be declared null and void as to the county property, and might be stayed, rescinded and annulled. Upon demurrer to this bill it was HELD :

1st. That said latter bill was not multifarious.

2nd. That the right of H. to file said bill was not affected by the decree passed on the 6th of July, 1885, by the Circuit Court of Baltimore City, as the provisions of the Code, Art. 16, sec. 72, requiring copies of the bill, decree and trustee's report of sale, in that case to be filed in the Circuit Court for Baltimore County, had not been complied with.

3rd. That a certified copy of each proceeding required by the statute to be sent to the Circuit Court of the county where the land to be affected was located, should be so sent as soon as it was filed; and it was not meant by the statute that nothing was to be sent until the case was finished.

4th. That no jurisdiction over the land in Baltimore County was acquired under the proceedings in Baltimore City until the provisions of the statute conferring such jurisdiction had been complied with, and therefore the doctrine of *lis pendens* did not apply.

5th. That as jurisdiction over the county property had not been acquired by the Circuit Court of Baltimore City at the time when H. bought, it could not be subsequently acquired to his prejudice.

6th. That a compliance with the statute at any time before the rights of third parties had supervened would be sufficient to confer jurisdiction upon the Court.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*S. Gross Horwitz,* and *Benjamin F. Horwitz,* for the appellants.

*Archibald H. Taylor,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The facts essential to the proper understanding and decision of this case, are, briefly, as follows: Victor De

Murguiondo, being the owner of one-fifth undivided interest in some ground rents and reversions in Baltimore City, and twenty acres of land in Baltimore County, on the 30th of April, 1885, mortgaged his undivided fifth interest in the whole property to Elias Livezey, to secure twenty-three hundred and fifty dollars. Upon the tenth of the June following, Victor De Murguiondo filed his bill in the Circuit Court for Baltimore City, against the owners of the remaining undivided interests, alleging the indivisibility of the property, and asking for a decree for its sale. Livezey, (Victor's mortgagee,) and Benjamin F. Horwitz, trustee for some of the parties (who were infants,) were made parties defendants. Process went out for the defendants, all of whom appeared and answered. Testimony was taken, and the case went to decree, which was passed on the sixth of July, 1885, for the sale of all the property. The Baltimore City property was sold and reported to the Court; but the Baltimore County property, viz., the twenty acres of land here involved, was not sold. It seems this land was offered for sale, and afterwards was withdrawn. Subsequently, Benjamin F. Horwitz, the trustee named in Livezey's mortgage to sell on default, (and also trustee named in the decree for the sale of the whole property,) filed his bond in the Circuit Court for Baltimore County, as required by law in such cases, and advertised Victor De Murguiondo's one undivided interest in the twenty acres in Baltimore County and proceeded to sell the same, *i. e.,* Victor De Murguiondo's one-fifth interest therein, and on the 17th day of December, 1887, did sell the same to Daniel Hoover for $2500.00; and on the 28th of July, 1888, conveyed by deed, duly acknowledged, the "one undivided fifth interest" therein to Daniel Hoover. The deed describes the interest sold as "one undivided interest" in the land, which is described by metes and bounds, courses and distances.

Daniel Hoover's bill, now under consideration, is for partition. It alleges that partition can be made fairly and equally between the parties interested, and is very desirable. It sets out all the facts hereinbefore recited; and, as amended by leave of the Court, avers that no part of the record of the proceedings in Baltimore City, under which decree was obtained for a sale of the undivided property, including the twenty acres now sought to be divided, up to the time when the plaintiff received his deed, had been recorded in Baltimore County; and that at the time of the plaintiff's purchase and the conveyance to him by B. F. Horwitz, trustee, he had no notice of the alleged proceedings by which decree was secured for the sale of the land mentioned in the plaintiff's bill; and that the property was then situated in Baltimore County, and only became a part of Baltimore City by virtue of the Act of 1888, ch. 98.

To the bill, as amended, the respondents demurred. 1. Because the interest of the plaintiff does not entitle him to file his bill. 2. Because the bill is multifarious; and 3. Because the proceedings in the case of *Victor De Murguiondo vs. Benj. F. Horwitz, et al.*, set out in the bill can not be reviewed in this way.

The Circuit Court of Baltimore City overruled the demurrer and from the order so ruling, this appeal was taken.

1. By express description, in his deed and its recitals, the plaintiff took an undivided interest in the land; and unless that interest had already been changed, by decree in the former case, into a right to share in the proceeds of sale it ordered, he has standing to maintain this bill; and that depends upon the effective character of that decree which the last ground of demurrer is designed to raise, and does raise.

2. As to the question of multifariousness, we need only say, we do not think the bill liable to that objec-

tion. The relief prayed for in respect to partition, could not be secured if that decree in the former case effectively and finally determined, that the property now sought to be divided, should be sold. In making this application for partition, it was eminently proper to state the fact of the former decree. The relief, as to it is, as the Court below states, only auxiliary. With the fact of such decree before it, and all the facts connected with it, the Court could formally decree that those proceedings were not a bar to a decree for partition sought by this bill, or by decreeing partition, notwithstanding those proceedings, and without any declaration respecting them, necessarily and irresistibly imply that the decree was not effective for want of jurisdiction or other valid reason. If those proceedings had not been set out in the bill, or had been ruled out on demurrer under the 17th Equity Rule, the defendants would have been compelled to set up that decree as a bar to the application for partition; and thus the plaintiff would have been driven to reply want of notice, and failure of the Baltimore Court to acquire jurisdiction; and then the respondents would have demurred and the question would have arisen in that way; and it would have been identically the same question. The bill does not seek relief in respect to two entirely different subjects; and two decrees would not be necessary to effect relief. The question is, simply, can and shall partition be granted? If the first decree is effective the relief must be denied; if not it will be granted.

3. This brings us to the main question involved, viz., whether the former decree effectually bars the plaintiff from maintaining this bill. This is not a bill of review or in the nature of a bill of review, and therefore much of the appellant's argument needs no allusion. It is a simple bill for partition, with incidental statement of the proceedings and decree which appellant's solicitors

contend are fatal to the plaintiff's bill for partition, and which the plaintiff contends are not in the way of the relief he asks, because he contends he had no notice such as the law requires, and, in fact, no knowledge of them, when he purchased and took his deed. The question is one of jurisdiction.

Section 72 of Art. 16 of the new Code, provides that "all proceedings for any partition of real estate, to foreclose mortgages on land, or to sell lands under a mortgage, or to enforce any charge or lien on the same, shall be instituted in the Court of the county, or city of Baltimore where such lands lie; or, if the lands lie partly in one county, and partly in another, or partly in one county and partly in the city of Baltimore, then such proceedings may be commenced in either county, or in the city of Baltimore; *provided*, that, in case of any sale of lands under a decree of a Court in any county where part only of the lands lie, a copy of the bill, decree and trustee's report of sale, and, in case of partition of real estate, a copy of the bill and the final decree of partition, certified under the official seal by the clerk of the Court in which the proceedings were commenced, shall be filed in the clerk's office of the Court of the county, or of the city of Baltimore, where any other part of such lands shall lie; and on receipt of such copies by the clerk of such Court, it shall be his duty forthwith to docket and index the said bill and other proceedings in his chancery docket, and to record the same as though said cause had originated in his Court." The demurrer admits the allegation of the bill, that, although nearly three years had elapsed, from the decree in Baltimore City, when the plaintiff purchased, and got his deed for one-fifth undivided interest in the land, up to that time there had not been, and was no record in Baltimore County of the proceedings in Baltimore City; but the demurrant insists that it was not necessary to record the proceed-

ings until after a sale should be effected, and that the law only provides for such record *after* sale made and reported. The language of the statute is "in case of a sale," and not "*after* any sale," and the appellee contends that it means, that where a sale is contemplated by the proceedings, the record of such proceedings is provided for, and that the reason for requiring such record requires that a contemporaneous record, or as nearly as may be, should be had of each part of the proceedings which the law requires should be recorded in the county where the lands lie. The manifest object of the statute supplies the key to its interpretation; and it ought to be construed so as to give effect to the intention of the Legislature, and to prevent the mischiefs which were provided against, in making these conditions of jurisdiction. Evidently, the Legislature meant to provide for notice to all who might treat with the owners or apparent owners of the land for the sale, lease or loan on mortgage of the exact condition of title. The design was clearly the same as underlies the registry laws, and was supplemental of them. To accomplish this end that which the law requires to be done as a condition of jurisdiction ought to be done with reasonable promptness, and at least, before the property is sold to an innocent purchaser in utter ignorance of any proceeding affecting the title. It ought to be done as promptly as practicable. The diligence needed in the record of deeds, to protect against subsequent transactions in ignorance of the deed given, should also be required here. The deed or mortgage first recorded takes precedence, if there be no actual knowledge of the other conveyance. Subsequent creditors dealing with the grantor in ignorance of a conveyance are protected even if the deed is not recorded within six months. It has always and frequently been decided in this State that the object of our laws for the registry of deeds and

mortgages was to prevent abuses and deceits growing out of pretended titles. *Nelson vs. Hagerstown Bank, et al.*, 27 *Md.*, 57. As we have said, the Legislature manifestly had the same object in view in making the provision under discussion. It was intended to keep people advised of proceedings taking place in a place or county where the lands did not lie and which affected the lands where they did lie. The statute fixes no time within which it shall be done. But in harmony with the rule which obtains in the registry of deeds and mortgages, and to secure the object sought, the statute ought to be construed as requiring this record notice to be given, at least, before a sale of the lands. Otherwise no good would be accomplished by the law. The statute requires the clerk, of the county or City of Baltimore, on receiving the copies sent to him, to docket forthwith the case on his chancery docket, "and to *index* the bill and other proceedings," and to record the same as if the case had originated in his Court. The direction to do it *"forthwith,"* which means immediately upon receipt, is suggestive of a purpose that no delay shall occur in giving notice to any who may need it of the true state of the case. The direction how and what to index is suggestive of the idea that the proceedings may not all come at once, and may not be recorded in consecutive order in the record book. Without deciding this to be imperative, the better practice and best way to secure the object intended would seem to be to send a certified copy of each proceeding as it is filed, to the Court of the other county, that concurrently persons there may have notice of what is being done about the property in that county, in another Court outside that county. Reliance is placed by appellant upon the doctrine of *lis pendens,* by which a party purchasing from one of the litigating parties during the pendency of a suit respecting the property purchased, is held to be bound by the

decree. *Lis pendens* is unquestionably "presumptive, if not actual notice," so as to place the purchaser in the same situation as the vendor stood. But to make a pending suit notice so as to bind a subsequent purchaser, (without actual notice, at least,) the Court, in which the suit is pending, must have acquired undeniable jurisdiction of the subject-matter and the parties. *Sanders vs. McDonald*, 63 *Md.*, 509. Here the statute imposes certain conditions which must be complied with in order to give the jurisdiction. As the issuance of a summons is not enough, as was decided in *Sanders' Case* above cited, to give jurisdiction, but the *subpœna* must be actually served before jurisdiction is acquired, so any other condition imposed with reference to the subject-matter or parties, ought to appear to have been complied with before a person purchasing from one of the parties should be held as affected with notice thereof. That protection of innocent purchasers and mortgagees was the object the Legislature had in view, and the reason leading to the provision of the Code as it now exists, is most clearly seen by looking at the phraseology of the first statute imposing these restrictions upon, and conditions of, jurisdiction. The Code of 1860 contained no such restrictions and conditions. The necessity for some such condition led to the Act of 1868, chap. 348, which first amended section fifty-eight of Art. 16, of the Code of 1860. Until this Act of 1868, under section 58, where the lands affected by the proceeding lay partly in one county and partly in another, the Court of the county in which proceedings should first be commenced had jurisdiction, without any qualification. This Act of 1868, chap. 348, provided that no such proceedings should operate to the *"prejudice of any bona fide* purchaser, mortgagee or pledgee, *until* a copy of the bill of complaint certified by the clerk of the Court in which it originated, shall be filed in the clerk's

office of the Court of the City of Baltimore or county where such property shall be at the time ; and that on receipt of a copy of such bill by the clerk of such Court, it shall be his duty forthwith to enter and index the bill in his chancery docket as though it had originated in his Court, and also to state on the docket from what Court it came, but not to issue process thereon.''

The Act of 1870, chap. 450, repealed the Act of 1868, chap. 348, and *re-enacted* the same, with additions and amendments. In doing so the phraseology of the Act of 1868, was somewhat changed; but the additional provisions were all indicative of the same object as was sought to be attained by the Act of 1868. The Act of 1870, provided for giving more information, and making that information more certain and permanent in form. Instead of simply providing, as in the Act of 1868, that such proceedings should not be binding on or operate to the prejudice of a *bona fide* purchaser, mortgagee, or pledgee, *until* the filing and docketing of the bill in the Court of the county where the land might lie, and where the proceeding was not instituted, it gave the jurisdiction to the Court where the land did not lie, *provided* certain conditions were *complied with,* and then superadded the requirement that the decree and trustee's report of sale, as well as the bill, should be *filed, docketed and indexed,* and then also provided for a record of them, all which was not provided for in the Act of 1868. All this shows that the Act of 1870, was not intended to curtail the protection which was given by the Act of 1868, to purchasers and mortgagees, who were such *bona fide,* but was in furtherance of their interest and protection.

Compliance with the conditions annexed being essential to the jurisdiction of the Court over the subject-matter, that compliance ought certainly to be required to precede a transfer of title to one who has nothing to affect him with notice, or put him on enquiry, even construc-

tively, of the proceedings which change the relations of his vendor or grantor to it.  Ordinarily, jurisdictional facts must precede, or at least, co-exist with the proceedings, and jurisdiction is never acquired until those essential facts appear to exist.  In a case of this kind certified copies of the bill, the decree, and the trustee's report of sale are required to be filed, in a docketed case, in the county where the land affected by them lies. The underlying reasons for all this require that they be filed, indexed and recorded in the county where the land lies as quickly as may be, that if possible it may appear on the Court docket of each county what is going on elsewhere about that property.  It is necessary to prevent fraud.  It certainly cannot be that the Act of 1870, means that nothing *shall* be recorded until the whole case is finished.  Litigation might indefinitely prolong the case, and delay its conclusion.  Years might elapse, as did in this case, and persons entitled to know, for lack of notice might be deceived into purchases they would not have thought of making, or into lending money on a security they would not have taken had they known.  This case strikingly illustrates the inequitable results of a contrary construction.  Plaintiff bought an undivided fifth of land, which he thought was divisible.  After paying the purchase money and getting a deed which, by its recitals, told him that his purchase had been ratified by *the Court*, he for the first time learns, that the same person who, as trustee, sold him the property under the sanction of Baltimore County Court, had been appointed by the Circuit Court of Baltimore City trustee to sell the same land, and that he is about to execute that decree.  If that decree binds him, instead of getting what he had a right to suppose he was buying, an undivided interest in land, and which sale the Circuit Court of Baltimore County had ratified, if he took any thing at all, he can only take the one-fifth of the

proceeds of the land less the expenses and trustee's commissions. A construction which involves such consequences can not be right. It can not be that where jurisdiction is made to depend upon the doing of certain things, the doing of them may be indefinitely deferred, and leave the jurisdiction meanwhile unperfected and dubious; and that, notwithstanding another Court had meanwhile taken jurisdiction of the subject-matter and ratified a sale of it, the other Court may still allow its trustee under its decree to proceed and undo and nullify the action of the *same trustee,* and of Baltimore County Court, and the title of the plaintiff, without, as yet, even complying with all of the conditions of jurisdiction. We do not mean to say that if there should be delay in the filing, docketing and recording the proceedings required to be transmitted, docketed, indexed and recorded, this negligence shall work an ouster of jurisdiction, if meanwhile there has been no dealing with an innocent person in the way of sale or mortgage. If, before any body has been misled, the statute is complied with, we think the jurisdiction should be upheld, as no one is injuriously affected by it. We only indicate what we think the better practice and best calculated to secure the protection designed by the statute; and decide that *in this case* we agree with the Circuit Court of Baltimore City, that as jurisdiction had not been *perfected* when this appellee bought, it could not be perfected afterwards to his prejudice. If the view we have taken be not the correct view, then it must follow, as a necessary consequence of holding the Baltimore City decree binding on the plaintiff, that the plaintiff paid his money for nothing; and took nothing by his purchase; that the attempted sale in Baltimore County though ratified by the Court gave Hoover no title to the land or right to stand in Livezey's or Victor Murguiondo's place in the other case. Livezey was a defendant, and assented to the

Murguiondo, *et al. vs.* Hoover.

decree. His mortgage rights were merged in the decree. He could only share in the proceeds, and could no longer enforce his mortgage independently of that decree. If the jurisdiction was fully acquired, Mr. Horwitz had no longer any power outside the decree appointing him trustee, to sell the whole property for the purposes of partition by distribution of proceeds of sale. There seems to us no escape from the conclusion that the merger was so complete, that Mr. Horwitz had no authority any longer to act under the mortgage, and his sale under that merged mortgage gave no right to Hoover to take any body's place or share of proceeds of the sale under the Baltimore City decree. He was not Livezey's agent outside the mortgage. He was attorney for the plaintiff, not Livezey, in the other suit. Equity recoils from a construction of the statute which brings such inequitable consequences. By holding that jurisdiction had not been acquired *quoad* the Baltimore County land no harm is done to any body. We think the decree overruling the demurrer should be affirmed.

> *Decree affirmed, and*
> *cause remanded.*

(Decided 18th December, 1889.)


ROBINSON, J., dissented.