895 A.2d 1118

**Sylvia B. PIVEN, et al.**

v.

**COMCAST CORPORATION, et al.**

**Nos. 0427 & 2281, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

April 10, 2006.

Marshall N. Perkins (Charles J. Piven, on the brief), Baltimore (Carl R. Gold, on the brief), Towson, for appellant.

Adam S. Caldwell (K.C. Halm, Cole Raywid & Braverman, LLP, on the brief), Washington, DC, for appellee.

Panel: JAMES R. EYLER, WOODWARD and
LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, J., Retired, Specially Assigned.

Presented here are two claims of trespass *quare clausum fregit* which were joined in one action in the Circuit Court for Baltimore County. The properties are under separate ownerships. One lies in Baltimore County but the other lies in Baltimore City. We shall apply to each claim the ordinary rule, now codified in Maryland Code (1974, 2002 Repl.Vol.), § 6–203(b)(4) of the Courts and Judicial Proceedings Article (CJ), that the venue for a trespass *q.c.f.* action is the county where the land lies. In doing so, we shall hold that CJ § 6–203(c) does not alter this rule under the facts of this case.

Subtitle 2, "Venue," of Title 6, "Personal Jurisdiction, Venue, Process and Practice," of the Courts and Judicial Proceedings Article consists of three sections. Section 6–201, set forth in full in the margin, provides the general rule for civil actions.[1] Those rules look to a defendant's residence or

---

1. CJ § 6–201 reads:

"**General rule.**

"(a) *Civil actions.*—Subject to the provisions of §§ 6–202 and 6–203 and unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular

economic activity, and, in the case of multiple defendants, to where the cause of action arose. Section 6–202 permits venues in thirteen specific types of actions that are in addition to the venues provided in §§ 6–201 and 6–203. No party to this action argues the applicability of § 6–202.

The relevant provisions of CJ § 6–203 read:

"(a) *In general.*—The general rule of § 6–201 does not apply to actions enumerated in this section.

"(b) *Interest in land.*—The venue of the following actions is in the county where all or any portion of the subject matter of the action is located:

"(1) Partition of real estate;

"(2) Enforcement of a charge or lien on land;

"(3) Eminent domain;

"(4) Trespass to land; and

"(5) Waste.

"(c) *Property in more than one county.*—If the property lies in more than one county, the court in which proceedings are first brought has jurisdiction over the entire property."

### The Proceedings

The Circuit Court for Baltimore County dismissed, without leave to amend, appellants' amended class action complaint. In essence, it alleged the following facts. One of the appellants, Sylvia B. Piven, owns property known as 7914 Stevenson Road in Baltimore County. The remaining appellants, Stanley A. "Tony" Chaplinski and Donna L. Chaplinski, own property known as 1410 Union Avenue in Baltimore City. The appellants sued eleven corporations, two limited partnerships, and two limited liability corporations, the names of all of which

business, is employed, or habitually engages in a vocation. In addition, a corporation also may be sued where it maintains its principal offices in the State.

"(b) *Multiple defendants.*—If there is more than one defendant, and there is no single venue applicable to all defendants, under subsection (a), all may be sued in a county in which any one of them could be sued, or in the county where the cause of action arose."

contain the word, "Comcast." In addition, appellants undertook to sue ninety-nine "John Doe" Comcast corporations. In ¶ 29 of the amended complaint, the appellants collectively define each named defendant and each John Doe defendant as " 'Comcast.' "

Appellants allege that Comcast "committed, *inter alia*, a trespass by running cable lines and/or wires across, above, and/or within the property of Plaintiffs and the proposed class ('Class') without valid permission to do so."[2] The amended complaint avers that "Comcast has no legal right to run, cause to be run, maintain, and/or benefit from this trespass; Defendants herein are jointly and severally liable for the tortious conduct identified herein and are the sole (and/or primary) financial beneficiaries of that trespassory conduct." Appellants complain that "Comcast" has no lawful permission or other legal justification or excuse for "Comcast's illegal trespassory conduct as alleged herein." They assert that "[t]he illegal lines or other wires running across the Affected Properties include wires running above Affected Properties (a trespass) and wires attached to utility poles emanating from Affected Properties (also a trespass)." These, and similar allegations, are all incorporated into each of the three counts set forth in the amended complaint. Those counts are labeled "Trespass to Property," "Unjust Enrichment," and "Action for Possession."

The appellees had moved to dismiss the original complaint on the ground, *inter alia*, of improper venue. They argued that, under CJ "§ 6–203(b)(4) and established common law

---

2. The class of plaintiffs advocated by appellants would be composed of "[a]ll persons or entities who (or that) owned or controlled (or own or control) the property on which Comcast—without express legal permission—has run or placed; has caused to be situated; and/or has otherwise maintained (and/or continues to maintain) lines, wires, and/or similar equipment (or has otherwise benefited from any of the foregoing), as further alleged in this pleading, including such lines, wires, and/or similar equipment for the purpose of transmitting cable television. Excluded from the Class are all Defendant entities, as well as all persons that are employed by (and all entities that are affiliates of) any Defendant entity."

principles, actions for trespass on, or [to] quiet title to, real property can only be maintained in the county in which the property is located. Claims involving distinct properties located in different jurisdictions and owned by different plaintiffs cannot be combined in one jurisdiction."

The circuit court agreed with appellees' argument, and granted the motion to dismiss, with leave to amend. Speaking to the plaintiffs, the court said:

"I can tell you that if another action is filed in Baltimore County that relates to the [Baltimore City] property that without there being a certification of a class action then this Court is going to dismiss that and—transfer it, not dismiss it—I'm going to transfer it to Baltimore City, because in my—well, I'm going to dismiss it, because there's got to be in my view a separate action filed by the Baltimore City Plaintiffs in Baltimore City and that Baltimore County is not the proper venue for the Chaplinski action."

In so ruling, the circuit court rejected the argument by the appellants that the controlling venue statute was CJ § 6–203(c) and that, based on the construction of a predecessor statute to subsection (c) in *Roessner v. Mitchell,* 122 Md. 460, 89 A. 722 (1914), subsection (c) authorized a single venue, even where non-contiguous, separately owned properties were involved.

Following the dismissal, the appellants adhered to their theory of the case and filed an amended complaint which continued to join the claim of the owners of the Baltimore City property. Appellees again moved to dismiss. The circuit court dismissed the amended complaint in its entirety, without transfer or leave to amend.[3] From that judgment this appeal was noted.[4]

---

3. We explain in Part III, *infra,* why the claim of the Baltimore County property owner was also dismissed.

4. Actually, two different notices of appeal were filed, resulting in two separate appeals being docketed in this Court, Nos. 427 and 2281. We hereby consolidate those appeals. The duplication has no present jurisdictional ramifications.

### The Parties' Arguments

Appellants' argument rests on *Roessner*, 122 Md. 460, 89 A. 722. That decision construed Maryland Code (1912), Article 16, § 87, a provision which, with an immaterial amendment by Chapter 36, § 13 of the Acts of 1962, was codified as Maryland Code (1957, 1966 Repl.Vol.), Article 16, Title, "Chancery," § 100 at the time CJ § 6–203(c) was adopted in the Code Revision project.

Former § 100 consisted of one long paragraph. To assist our analysis, we shall divide that paragraph into subsections.

"[ (a) ] Whenever lands lie partly in one county and partly in another, or partly in a county and partly in the City of Baltimore, or whenever persons proper to be made defendants to proceedings in chancery reside, some in one county and some in another, or some in a county and some in the City of Baltimore, that court shall have jurisdiction in which proceedings shall have been first commenced;

[ (b) ] provided that all proceedings for any partition of real estate, to foreclose mortgages on land, or to sell lands under a mortgage, or to enforce any charge or lien on the same shall be instituted in the court of the county or the City of Baltimore where such lands lie;

[ (c) ] or if the lands lie partly in one county and partly in another, or partly in one county and partly in the City of Baltimore, then such proceedings may be commenced in either county or in the City of Baltimore.

[ (d) ] When the defendants, or any of them, reside in a different county from that in which the land lies which is to be affected by a suit, the circuit court for the county (or Baltimore City) where the land or any part thereof lies shall alone have jurisdiction; and process may be sent to the county or counties wherein the defendants respectively reside, to be served by the sheriff of such county or counties upon the defendants named therein, and returnable as directed in the summons." [5]

---

5. The amendment to this statute by Chapter 36, § 13 of the Acts of 1962 deleted provisions requiring the filing of the relevant papers that had

*Roessner* arose out of a sale in lieu of a partition in kind. The plaintiffs and the defendants comprised the five children of a decedent, who had devised to each child an undivided one-fifth interest in land in Baltimore County and an undivided one-fifth interest in the decedent's interest in land in Washington County. *See Roessner v. Mitchell, Trustees,* No. 85, October 1913 Term, Court of Appeals of Maryland, Record at 4. The partition action was filed in the Circuit Court for Baltimore County which had ordered and ratified the sale of the Washington County interest as well as of the Baltimore County property. The purchaser of the Washington County interest, Roessner, refused to settle, "contending that the Circuit Court for Baltimore County was without jurisdiction to decree the sale of land in Washington County, [where] such land is not contiguous to and does not form a part of the tract or parcel of land that is located in Baltimore County, but is a separate tract or parcel of land." *Roessner,* 122 Md. at 463, 89 A. at 722–23. Rejecting this contention, the Court focused on the last clause of our subsection [ (a) ], *i.e.,* "that court shall have jurisdiction in which proceedings shall have been first commenced."

The Court held:

"We do not construe this language as it is construed by the [purchaser] to apply only in those cases where the lands situated in the different counties are contiguous and together form one tract or parcel of land. The language used should be given a wider and more comprehensive meaning. The purpose of the statute was to avoid a multiplicity of suits and the costs and expenses of such suits. If the appellant's construction is to be placed upon the statute, it would apply only to a very small number of cases. In the great number of cases, where the lands in the different counties form separate and distinct tracts, proceedings

been generated in the court where the proceedings were first instituted with the court in the county where the other part of the lands lay. These procedural provisions were deleted from the statute as a result of the adoption by the Court of Appeals of the Special Proceedings Rules. *See, e.g.,* current Maryland Rule 14–306.

would have to be instituted in each county in which the land is situated, which would be attended with much cost and expense. This we think was not the intention of the Legislature as expressed by the statute. In our opinion, the meaning of the language of the statute is that, if all the lands to be affected by the suit are not situated in one county or in the City of Baltimore, but some of them are in one county and some in one or more of the other counties, or some in the City of Baltimore and some in one or more of the counties, then such proceedings may be commenced in either county, or in the City of Baltimore, where any part of said land is situated, and the Court in which the proceedings shall have been first commenced shall have jurisdiction as to all of said lands without regard to the fact that such lands are contiguous and form one tract or parcel of land."

*Id.* at 463–64, 89 A. at 723.

From the foregoing, appellants conclude that CJ § 6–203(c) provides venue in Baltimore County for the claim of trespass to property in Baltimore City.

The appellees argue that CJ § 6–203(b)(4) controls. They submit that

"appellants cannot evade the venue statute by joining distinct trespass claims regarding distinct pieces of real property and then claiming that the 'property' that is the subject matter of the action 'lies in more than one county.' The 'property' that is the 'subject matter' of the Chaplinskis' claim does *not* lie in more than one county, Section 6–203(c) does not apply to their claim, and the Circuit Court for Baltimore County was not a proper venue for this action."

Brief of Appellees at 14 (footnote omitted). The appellees point out that *Roessner* involved partition, not trespass, and that there was a common ownership of the undivided interests in the two properties that were sold in lieu of partition.

### The Issue

Thus, the issue is whether CJ § 6–203(c) permits, or CJ § 6–203(b)(4) prohibits, the joinder of an action of trespass to

realty in Baltimore City with an action of trespass to separately owned realty in Baltimore County.

## Discussion

CJ § 6–203(c) is not to be read completely independently of subsection (b). For example, if subsection (c) were read independently of subsection (b), lands lying in county A and in county B could be partitioned by an action brought in county C, which is not the situs of either property. That reading completely negates the express requirement of subsection (b) that a "[p]artition of real estate" be brought "where all or any portion of the subject matter of the action is located." Reading (b) and (c) independently violates the rules of construction that no part of a statute should be treated as surplusage and that all parts of a statute dealing with the same subject matter should be reconciled to the fullest extent reasonably possible. *Kane v. Board of Appeals of Prince George's County,* 390 Md. 145, 162, 887 A.2d 1060, 1070 (2005); *Gilmer v. State,* 389 Md. 656, 663, 887 A.2d 549, 553 (2005); *Lawson v. State,* 389 Md. 570, 583, 886 A.2d 876, 883 (2005). Indeed, the appellants do not contend that their putative representative claims could be brought other than in Baltimore City or Baltimore County.

We also note that *Roessner's* holding is not on venue grounds. The defaulting purchaser was attacking collaterally the final order of ratification of sale of the interest in Washington County land on the ground that the court in Baltimore County had no jurisdiction over the subject matter. Viewed in this light, it appears that at least one purpose of CJ § 6–203(c) is to undergird subject matter jurisdiction in "the court in which proceedings are first brought" over property in the ultra-forum county, in cases where "the property lies in more than one county." In other words, the sophisticated draftpersons of Code Revision meant jurisdiction when they said "jurisdiction" in subsection (c) and meant venue when they said "venue" in subsection (b).

Under the facts in *Roessner,* the petitioners could have "first brought" their partition action in either Washington County or Baltimore County, because the undivided interests

that they had inherited were in lands in each county. *Roessner* teaches that, under CJ § 6–203(c), the land need not be one contiguous parcel, lying partly in one county and partly in another. *Roessner*, however, does not directly address whether a plaintiff can bring a CJ § 6–203(b) claim in a county where that plaintiff holds no interest in realty, simply by joining that § 6–203(b) claim with another similar § 6–203(b) claim of another plaintiff that does concern realty lying in the forum county.

To support their respective positions on the permissible scope of joinder of trespass claims, the parties refer to legislative history, materials from Code Revision, and judicial applications of predecessor statutes. We now turn to a review of that history.

### Legislative History

The current venue provisions were enacted by Chapter 2 of the Acts of 1973, First Extraordinary Session. *See also,* generally, *Kane v. Schulmeyer,* 349 Md. 424, 429–36, 708 A.2d 1038, 1041–44 (1998) (discussing background of current venue provisions). The Revisor's Note to Maryland Code (1974), CJ § 6–203 advises as to the sources of the provisions at issue here.

"Subsection (b) lists the exceptions contained in [Maryland Code (1957, 1969 Repl.Vol.)], Article 75, §§ 75(a) and 79 and Article 16, § 100. Reference to proceedings for foreclosure or sale of lands under a mortgage are proposed for deletion as covered by subsection (b)(2)—Enforcement of a charge or lien on land.

"Subsection(c) is new language derived from Article 21, § 12–102, and Article 16, §§ 100, 102 and 104."

Code (1957, 1966 Repl.Vol.), Article 16, § 100, has been set forth, *supra,* with editorial subparagraphing. Subsection [(b)] was the source for CJ § 6–203(b)(1) and (2). The immediate source for subsection (b)(3) was Code (1957, 1972 Interim Supp.), Article 21, Title, "Real Property," § 12–102(a) ("A proceeding for condemnation shall be brought in a court of

law in the county where the property sought to be condemned is situated.").[6]

The inclusion of trespass in subsection (b) was based on its recognition as a local action by the remedial provisions of Maryland Code (1957, 1969 Repl.Vol.), Article 75, Title, "Pleading, Practice and Process at Law," Subtitle IV, Title, "Process," § 79. It provided:

> "If any trespass shall be committed on any real property and the person committing the same shall remove from the county where said property may lie or cannot be found in such county, such trespasser may be sued in any county where he may be found, and all warrants of resurvey in such cases shall be directed to and executed by the sheriff and surveyor of the county where the land lies and returned to the court from which the warrant issued or to the court to which the case may have been removed for trial before the return of said warrant; and an executor may be sued either in the county where he resides or where he obtained administration."

Trespass *q.c.f.* was, and is, a local action. *Superior Constr. Co. v. Elmo,* 204 Md. 1, 6, 102 A.2d 739, 741 (1954). "[L]ocal actions must be brought in the jurisdiction where they arise, while transitory actions may be instituted wherever the defendant happens to be." *Gunther v. Dranbauer,* 86 Md. 1, 6, 38 A. 33, 34 (1897). There, Chief Judge McSherry, writing for the Court, stated "an unerring" test for determining "whether a particular cause of action sounding in damages is local or transitory." *Id.* That test "inheres in the nature of the *subject* of the injury as differing from the *means* whereby, and the mere *place* at which, the injury was inflicted." *Id.* Where the subject of the injury is real estate, the action

---

6. Subsection (b) of former Article 21, § 12–102 provided:

"Whenever the property sought to be condemned lies in more than one county, the proceeding for condemnation may be brought in a court of law in any county where any part of the property lies, and that court in which proceedings are first brought shall have jurisdiction."

Former § 12–102(b) has been incorporated in CJ § 6–203(c).

"obviously" must be local, "for the reason that the injury *to* that particular real estate ... could not possibly have arisen anywhere else than where the thing injured was actually situated." *Id.*

Former Article 75, § 79 carried forward provisions, first enacted by Chapter 87, § 4 of the Acts of 1785, which were designed to address an injustice in the remedy of trespass *q.c.f.* The injustice in the common law rule is illustrated by an opinion rendered by Chief Justice John Marshall, on circuit, in *Livingston v. Jefferson,* 15 F. Cas. 660 (C.C.D.Va.1811) (No. 8,411). Livingston sued Thomas Jefferson, in Virginia, after his term as President had expired, alleging that federal marshals, acting under orders from Jefferson, had trespassed on property of the plaintiff in New Orleans. Jefferson pleaded that the action could be brought only in the territory of Orleans. Livingston's replication was that Jefferson was not subject to the service of process in the court of the territory of Orleans, but only within the District of Virginia. To this replication, Jefferson demurred. The court sustained the demurrer because, under the common law rule of local actions, Jefferson was amenable only to the process of the district in which the land lay. Justice Marshall called the rule which he was obliged to apply "a total failure of justice" and "a clear right without a remedy."

The Acts of 1785, ch. 87, § 4, however, did not apply to an action on the case for waste. Consequently, in *Patterson v. Wilson,* 6 G. & J. 499 (1834), the Court of Appeals affirmed the dismissal of an action for waste, damaging property in Dorchester County, brought against a resident of Caroline County in the Caroline County Court. This treatment of waste as a local action has been carried forward in CJ § 6-203(c)(5).

Appellants have referred us to Report No. 3F, dated July 16, 1973, to the General Assembly of Maryland by the Code Revision Commission (the Report). The Report presented the proposed Courts and Judicial Proceedings Article. In relevant part it states:

"The draft attempts to minimize the distinction between local and transitory causes of action to the fullest extent possible. . . .

"Section 6–203 contains venues for actions to which the general rule does not apply. While some of these are local actions, most are transitory but are statutory exceptions to the general rule. If an action is listed in § 6–203, that section controls the venue, unless § 6–202 provides an additional venue." [7]

Report at 47–48.

As explained by Judge Wilner, writing for the Court in *Kane*, 349 Md. at 436, 708 A.2d at 1044–45, it was in CJ §§ 6–201 and 6–202 that Code Revision "provided for some expansion or liberalization in the preexisting" law of venue. With respect to § 6–203, however, our review, set forth above, demonstrates that Code Revision carried forward the venue requirements of preexisting statutes, without flagging for the General Assembly in the Revisor's Notes any proposed, liberalizing amendments.

Maryland appellate decisions, in addition to *Roessner*, dealing with § 6–203(b) actions involving property lying in more than one county, have involved common ownership of the subject realty. *See Ahrens v. Ijams*, 158 Md. 412, 148 A. 816 (1930) (holding that the public local law of Baltimore City, authorizing foreclosure by assent to decree, did not give the court in Baltimore City jurisdiction over a portion of mortgaged land lying in Baltimore County); *Murguiondo v. Hoover*, 72 Md. 9, 18 A. 907 (1889) (holding that lis pendens did not bar acquisition of good title by plaintiff, a mortgage foreclosure sale purchaser, to portion of partitioned property lying in non-forum county, where purchase was consummated before recording in non-forum county of partition judgment from forum county).

---

7.  As previously noted, no party argues that § 6–202 has any application to the instant matter.

In *Federal Land Bank of Baltimore, Inc. v. Esham,* 43 Md.App. 446, 406 A.2d 928 (1979), this Court applied *Roessner* to the construction of former Maryland Rule W74 b, under which the mortgage foreclosure *sale* of property located in more than one county could be made "in any county in which part of the property is located." [8] *Esham* held that property lying in Worchester County could be sold at a sale in Wicomico County that included Wicomico County realty. *Id.* at 467–69, 406 A.2d at 941–42. The security for the mortgage loans was the property of a chicken growing and processing enterprise, and the mortgagors were family owned corporations and members of the owning family. *Id.* at 448, 406 A.2d at 931.

## Joinder

Essentially, appellants' position is that, by their voluntarily joining together in Baltimore County, § 6–203(c) overrides the venue privilege conferred on the alleged trespasser(s) by § 6–203(b)(4). Appellants have not directed our attention to, nor have we found, any decision illustrating the override of a defendant's venue privilege by the voluntary joinder of plaintiffs.

Considerable guidance, however, is found in a case of alleged nonjoinder, *Ho, ert v. Pue,* 72 Md. 307, 20 A. 182 (1890), an action in trespass. There, the plaintiff's father, in an out-conveyance of a farm, had reserved for himself and his descendants the use of a certain graveyard on the property for customary graveyard uses. The plaintiff's declaration alleged that two of his children were buried there and that the defendant had removed the fence around the graveyard, plowed the yard and sowed it in grass, removed shade trees, and destroyed the yard as a place of sepulture. The defendant asserted nonjoinder of the other heirs of the father, but the trial court's rejection of that defense on legal grounds was affirmed.

---

8. Current Rule 14–207(a)(2) provides that, "when property is located in more than one county, the sale shall be made in the county in which the action is pending."

The Court said that the reserved right "was a right of several use thereof by each and every of the descendants" of the father. *Id.* at 309, 20 A. at 182. Interference with that individual right

> "would subject the offender to a separate right of action on the part of each person who might be injured. *A. would have no right to complain or to join in suing for an injury to B.* which in no manner affected or disturbed him. The plowing up, and levelling with the ground, the graves of the plaintiff's children, unlawfully done, would certainly give him a right of action for damages, in which no one else who might have a right of use of the grave-yard would have a like right to share."

*Id.* (emphasis added).

In the instant matter the alleged injury suffered by Ms. Piven is separate from the alleged injury suffered by the Chaplinskis, and the latter have no "right" to join in the suit by the former. Indeed, because the case before us involves physically separate and independently titled properties that are the subjects of different physical invasions, the claims sought to be voluntarily joined are further removed from each other than the claims unsuccessfully sought to be joined compulsorily in *Herbert v. Pue.*

There is also an analogy between the appellants' voluntary joinder and a consolidation, for pretrial and trial, of actions. Maryland Rule 2–327(d) authorizes the transfer of certain actions "on motion of a party or on the transferor court's own initiative." Rule 2–327(d)(2). The rule was adopted by the Court of Appeals in order to consolidate 3,000 products liability cases involving asbestos. *See ACandS, Inc. v. Godwin,* 340 Md. 334, 342–43, 667 A.2d 116, 119–20 (1995). Rule 2–327(d)(1) provides:

> "If civil actions involving one or more common questions of law or fact are pending in more than one judicial circuit, the actions or any claims or issues in the actions may be transferred in accordance with this section for consolidated pretrial proceedings or trial to a circuit court in which (A)

*the actions to be transferred might have been brought,* and (B) similar actions are pending."

(Emphasis added). As a result, the Chaplinskis could not have their action transferred to Baltimore County, even if it had been instituted in Baltimore City. Underlying Rule 2–327 is the recognition that venue is a statutory right which is not to be defeated by procedural joinder.

### Conclusion

In order to decide the instant matter, we need not define fully the outcomes of the potential interplays between subsections (b) and (c) of CJ § 6–203. It is sufficient to hold, as we do now, that the General Assembly did not intend § 6–203(c) to permit the override of § 6–203(b) by the expedient of voluntarily joining in one action claims of separate owners involving separate injuries to separate properties. To join § 6–203(b) claims, the factual or legal nexus between the lands in different counties must antedate institution of the action, *e.g.,* common ownership in a partition or condemnation action, or use as security under the same lien instrument. No venue nexus between lands in different counties, however, is created solely through a voluntary joinder by separate owners of separate parcels for the purposes of initiating a combined action asserting separate claims. This construction of the statute is consistent with its language, its legislative history, prior cases, and judicial respect for the legislatively created venue privileges in § 6–203(b).

### II.

■ Appellants alternatively submit that, even if the Chaplinskis' claim in Count I, labeled "Trespass to Property," cannot proceed in Baltimore County, the claims in Counts II and III, respectively labeled "Unjust Enrichment" and "Action for Possession," can proceed there because they do not sound in trespass. We have set forth, *supra,* under **"The Proceedings,"** allegations of the amended complaint that are incorporated into each count. Each count is predicated on the invasion of a subject property as constituting a trespass.

"Courts and administrative agencies are expected to look at the substance of the allegations before them, not merely at labels or conclusory averments." *Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 195, 577 A.2d 34, 36 (1990). Counts II and III in substance seek different forms of relief for the alleged trespasses. The "Unjust Enrichment" count seeks the value of the interest in the realty allegedly appropriated without authorization, and the "Action for Possession" seeks the removal of the intrusion. Thus, with respect to venue, the Chaplinskis' claim rises or falls as a whole.

### III.

The circuit court dismissed the entire action, although it had the discretion, "in the interest of justice," to transfer the Chaplinski claim to Baltimore City. *See* Maryland Rule 2–327(b). The explanation for dismissal is that the appellants chose to lock the two claims together.

At the hearing in the circuit court on the appellees' motion to dismiss the amended complaint, the appellants referred to the earlier hearing on the complaint where the appellees had pointed out that the Chaplinskis could "ultimately pursue" their case in Baltimore City. Appellants told the circuit court that "that may be true, but that's not Plaintiffs' case. That's not what Plaintiffs seek to do." The circuit court merely accommodated appellants' position.

Questioned on this point at oral argument in this Court, appellants advised that they wanted the cases to rise or fall together. When appellants' counsel were asked, specifically, if that was the position of their clients, counsel advised this Court that their clients did not want to try twenty-four separate cases.

Accordingly, we shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANTS.**